No. 94,086

In the Matter of MARLIN E. JOHANNING, *Respondent.*

111 P.3d 1061

Opinion filed June 3, 2005.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John H. Fields,* of Kansas City, Kansas, argued the cause for respondent. *Marlin E. Johanning,* respondent, argued the cause *pro se.*

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent Marlin E. Johanning of Atchison, an attorney admitted to the practice of law in Kansas.

The complaint filed against the respondent Johanning, alleged the respondent violated KRPC 1.1 (2004 Kan. Ct. R. Annot. 342) (competence); KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence); KRPC 1.4 (2004 Kan. Ct. R. Annot. 367) (communication); and KRPC 3.2 (2004 Kan. Ct. R. Annot. 440) (expediting litigation).

A disciplinary panel of the Kansas Board for Discipline of Attorneys conducted formal hearings, as required by Kansas Supreme Court Rule 211 (2004 Kan. Ct. R. Annot. 275).

Based upon clear and convincing evidence, a unanimous hearing panel made the following findings of fact:

"Complaint of Robert Grimmig — DA9034

"2.   In November, 1988, E.M.G. was born to Victoria L. Hunt and Robert Grimmig. On February 28, 1990, Mr. Grimmig was arrested. He has been incarcerated continuously since that time.

"3.   Later, Ms. Hunt and Ross D. Blanc married. Then, on February 8, 2002, Mr. Blanc filed a step-parent petition for adoption of E.M.G. Mrs. Hunt Blanc consented to the adoption by her husband. Mr. Grimmig did not consent to the adoption.

"4.   The Court scheduled a hearing on Mr. Blanc's petition for March 15, 2002.

"5.   On March 4, 2002, Mr. Grimmig filed an answer to the petition, an objection to the adoption, and an objection to changing the child's name.

"6. On March 15, 2002, the Court appointed the Respondent to represent Mr. Grimmig and rescheduled the hearing for March 27, 2002.

"7. On March 27, 2002, the Court held a hearing on the petition for adoption. Mr. Grimmig appeared with the Respondent. At the conclusion of the hearing, the Court granted the petition for adoption because Mr. Grimmig failed to assume the duties of a parent for over two consecutive years immediately prior to the filing of the petition.

"8. On April 8, 2002, the Respondent filed a timely notice of appeal in behalf of Mr. Grimmig.

"9. The Respondent did not file a motion for appointment of appellate counsel nor did the Respondent withdraw as counsel of record in the adoption case.

"10. The Respondent failed to file a docketing statement, as required by the Kansas Supreme Court Rules.

"11. On August 20, 2002, Mr. Grimmig made a request for appointment of appellate counsel. The Court appointed the Respondent to represent Mr. Grimmig in the pending appeal.

"12. After the Court appointed the Respondent, the Respondent failed to file a docketing statement as required by the Kansas Supreme Court Rules.

"13. One year later, on August 20, 2003, the Respondent filed a motion to docket appeal out of time. On August 26, 2003, the Kansas Court of Appeals denied the Respondent's motion to docket the appeal out of time.

"14. The Respondent filed a motion to reconsider. The Court denied the Respondent's motion to reconsider. In its order, the Court stated:

'On August 26, 2003, this court issued an order denying the appellant's motion to docket his appeal out of time. The appellant has filed a motion to reconsider this order. The motion is denied. The record available to this court shows a delay of some three months between the filing of the notice of appeal and the filing of a request for appointment of counsel. No explanation is offered that would constitute exigent circumstances for the delay in requesting appellate counsel or for the lengthy delay between the request for appellate counsel and the subsequent attempt to docket the appeal. The court reiterates its concern about the need for finality in matters of placement of and parental responsibility for a child.'

### "Complaint of David W. Chapman — DA9064

"15. In 2001, David W. Chapman was convicted of a felony crime in the District Court of Atchison County, Kansas, in case number 01CR58, and sentenced to prison.

"16. On May 11, 2001, trial counsel filed a notice of appeal in Mr. Chapman's case.

"17. On May 22, 2001, the Appellate Defender's Office was notified that it had been appointed to represent Mr. Chapman in the appeal. On June 25, 2001, the Appellate Defender's Office filed a motion to docket appeal out of time. On July 11, 2001, the Kansas Court of Appeals granted the motion.

"18.   The Appellate Defender's Office prepared a brief in behalf of Mr. Chapman. On March 11, 2002, the Appellate Defender's Office filed the brief. After reviewing the brief filed in his behalf, Mr. Chapman contacted the Appellate Defender's Office, expressed his dissatisfaction with the brief, and demanded that the brief be corrected and expanded. On May 7, 2002, the Appellate Defender's Office filed a motion for permission to withdraw as appellate counsel. The Court allowed the Appellate Defender's Office to withdraw on May 20, 2002.

"19.   On May 20, 2002, and again on July 8, 2002, the Court directed Mr. Chapman to respond to the order or 'the case [will be] set on the next available no argument docket.'

"20.   On July 18, 2002, Mr. Chapman responded to the Court's order by filing a motion to stay the appeal, a motion for the appointment of counsel, and a motion that additional facts and issues be included in the appeal.

"21.   On July 30, 2002, the Court stayed the appeal, pending the appointment of counsel. On August 8, 2002, the Court appointed the Respondent to represent Mr. Chapman. The Court directed that the Respondent review the record and notify the Court whether further briefing would be required by September 3, 2002.

"22.   Rather than notifying the Court whether further briefing would be required by September 3, 2002, the Respondent merely entered his appearance.

"23.   On September 18, 2002, Mr. Chapman notified the Court that he had not heard from the Respondent. Mr. Chapman requested that the appeal be stayed until additional facts and issues could be presented to the Court.

"24.   On October 4, 2002, the Court issued an order regarding status of the appeal. In its order, the Court stated:

'Appellant's motion to stay the above-captioned case along with his motion for investigation, de-novo review, appointment of new counsel and motion to force the State to supply a copy of their brief, are denied.

'The Court notes that in its order dated July 30, 2002, granting Appellant's motion for stay of the appeal pending appointment of new counsel, the Court ordered newly appointed appellate counsel to notify this court, within 20 days of appointment, whether additional briefing was required. The records on file with the Clerk of the Appellate Court shows Marlin Johanning was appointed to represent Appellant on August 8, 2002. As the time for response has passed, this case is returned to ready status with the briefs already on file and the case will be set on the next available summary calendar-no oral argument docket.' A note on the order indicates that a copy of the order was sent to counsel.

"25.   On October 9, 2002, the Respondent filed another motion to stay the appeal.

"26.   On October 23, 2002, the Court denied the Respondent's motion to stay the appeal and issued a scheduling order, allowing the Respondent additional time to file a supplemental brief. The order stated:

'Appellant's motion to stay the above-captioned appeal is denied. Appellant's newly appointed counsel's motion to file a brief on behalf of Appellant is granted. Counsel's motion for a 45 day extension of time to file his brief is denied. Appellant's brief is to be filed and served no later than November 22, 2002, Appellant's counsel is ordered to notify this Court as of the date the new brief is filed whether Appellant wishes the prior Appellant's brief struck. Appellee will have 30 days after the date Appellant's brief is filed to file a revised Appellee's brief, or notify this Court that additional briefing is not required. As this case has been pending over one year, no extensions of time will be granted.'

"27. On November 22, 2002, the Respondent filed a supplemental brief in behalf of Mr. Chapman. Thereafter, on February 6, 2003, the State filed a supplemental brief. On February 21, 2003, the Court scheduled the case for summary calendar, no oral argument.

"28. On June 6, 2003, the Court affirmed Mr. Chapman's conviction.

"29. On June 30, 2003, the Respondent filed an 'Objection to Both the Process Leading to, and the Forum of, Summary Calender No Oral Argument Docket, and Appellant's Motion for Rehearing or Modification.'

"30. The Court denied the Respondent's motion for rehearing. The Court provided the Respondent with five additional days to file a petition for review. The Respondent failed to file a petition for review within the allotted time period.

"31. Thereafter, on August 6, 2003, the Respondent filed a motion for leave to docket petition for discretionary review out of time. On August 12, 2003, Chief Justice Kay McFarland denied the Respondent's final motion in Mr. Chapman's case."

Johanning did not file exceptions to any of these findings of fact. Under Supreme Court Rule 212(c), "[a]ny part of the hearing report not specifically excepted to shall be deemed admitted." (2004 Kan. Ct. R. Annot. 285) We, therefore, adopt the disciplinary panel's findings of fact, concluding the findings are supported by clear and convincing evidence. See Supreme Court Rule 211(f) (2004 Kan. Ct. R. Annot. 275) (misconduct to be established by clear and convincing evidence).

Based upon these findings, the disciplinary panel made the following conclusions of law:

### "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, and KRPC 3.2, as detailed below.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent Mr. Grimmig when he failed to properly prepare a timely motion to docket the appeal out of time. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Mr. Grimmig and Mr. Chapman. Regarding Mr. Grimmig, the Respondent failed to provide diligent representation when he failed to timely file a motion to docket appeal out of time. The Respondent failed to provide Mr. Chapman with diligent representation when he failed to request that the appeal be removed from the summary calendar docket and scheduled for oral argument. Additionally, the Respondent failed to timely file a petition for review in Mr. Chapman's case. Because the Respondent failed to act with reasonable diligence and promptness in representing Mr. Grimmig and Mr. Chapman, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite Mr. Grimmig's appeal. It took the Respondent one full year from the time he was appointed to file a motion to docket the appeal out of time. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2."

The panel did not address a violation of KRPC 1.4.

The disciplinary panel then considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. The disciplinary panel concluded:

"*Duty Violated.* The Respondent violated his duty to his clients to provide competent and diligent representation.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused Mr. Grimmig and Mr. Chapman potential injury — the outcomes of their cases may have been different had the Respondent provided competent and diligent representation.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be

imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined in three cases:

"On April 6, 1998, in DA6800, the Disciplinary Administrator informally admonished the Respondent for having violated MRPC 1.2, MRPC 1.3, MRPC 1.4, MRPC 1.7, and MRPC 1.8. [Footnote omitted.]

"The Disciplinary Administrator also informally admonished the Respondent on April 6, 1998, in DA6893. In that case, the Review Committee directed that the Disciplinary Administrator informal admonish the Respondent for having violated MRPC 1.3 and MRPC 1.4.

"On June 1, 2001, the Kansas Supreme Court censured the Respondent for having violated KRPC 1.3, KRPC 1.4, and KRPC 1.15 in DA7747. The Court's censure was published in the Kansas Reports at *In re Johanning*, [271 Kan. 638, 23 P.3d 895] (2001).

"A Pattern of Misconduct. Included in this case are two complaints. The complaints involve similar misconduct. Additionally, the Respondent has previously been disciplined in three cases. All of the previous cases have included a violation of the rule requiring diligent representation. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, and KRPC 3.2. As such, the Respondent committed multiple offenses.

"Vulnerability of Victim. Mr. Grimmig and Mr. Chapman were vulnerable to the Respondent's misconduct because they were incarcerated and did not have ready access to substitute counsel.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1979. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 23 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive

member of the bar in Atchison, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse."

In addition to the above-cited factors, the disciplinary panel cited and considered Standard 4.42, which states guidelines for when suspension is the appropriate discipline, and Standard 4.43, stating guidelines for reprimand. The Disciplinary Administrator recommended to the panel that the respondent be suspended from the practice of law for a period of 6 months. Johanning proposed probation. Following the first day of hearing, the disciplinary panel issued an interim order, directing the respondent to expand and implement a plan of probation, paying close attention to Supreme Court Rule 211(g) (2004 Kan. Ct. R. Annot. 275). Respondent resubmitted a probation plan and, at the continued hearing, presented the testimony of Dan Wiley who had agreed to serve as a practice supervisor. After hearing the additional evidence, the disciplinary panel unanimously recommended that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. However, the disciplinary panel recommended that the court suspend the imposition of the suspension and place the respondent on probation for a period of 18 months.

This court views the conclusions of law and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993). Again, respondent does not take exception to any of the disciplinary panel's conclusions. The panel's conclusions are amply supported and we agree with and adopt the panel's conclusions of law and recommendations.

Johanning violated KRPC 1.1 (2004 Kan. Ct. R. Annot. 342), KRPC 1.3 (2004 Kan. Ct. R. Annot. 354), and KRPC 3.2 (2004 Kan. Ct. R. Annot. 440).

IT IS THEREFORE ORDERED that the respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. Imposition of the suspension is suspended and the respon-

dent is place on probation for a period of 18 months subject to the following terms and conditions:

1. Dan K. Wiley, an attorney at law practicing in Leavenworth, Kansas, will supervise the respondent's probation and monitor his practice for a period of 18 months from the date of the court's opinion or until such time as the court discharges the respondent from probation pursuant to Kansas Supreme Court Rule 211(g)(7) and (8) (2004 Kan. Ct. R. Annot. 275). Throughout the period of probation, the respondent shall compensate Mr. Wiley for time expended in the supervision of the respondent's practice.

2. Mr. Wiley shall be acting as an officer and agent of the court while supervising the respondent's probation and monitoring the legal practice of the respondent.

3. Mr. Wiley shall be afforded all immunities granted by Kansas Supreme Court Rule 223 (2004 Kan. Ct. R. Annot. 323) during the course of his activities as directed by the court.

4. Mr. Wiley shall meet with the respondent on a monthly basis or more frequently if he deems it necessary or as directed by the Disciplinary Administrator. The respondent will allow Mr. Wiley access to his files, his employees, his trust account, and his doctors or therapists, if any.

5. While familiarizing himself with the respondent's practice, Mr. Wiley should determine whether the respondent's practice of law should be limited to certain areas. In the event Mr. Wiley determines that the respondent's practice should be limited, Mr. Wiley shall notify the respondent and the Disciplinary Administrator's office in writing of such a determination. The respondent shall comply with any practice limitations Mr. Wiley places on him.

6. Mr. Wiley shall report to the Disciplinary Administrator on a quarterly basis or as directed by the Disciplinary Administrator. Mr. Wiley shall report to the Disciplinary Administrator regarding the respondent's progress, the changes made to organize the respondent's practice, relevant observations regarding the respondent's practice, and any problems he observes related to the respondent's practice. Mr. Wiley shall provide the respondent with a copy of each such report to the Disciplinary Administrator. The respondent shall follow all recommendations and correct all defi-

ciencies noted in Mr. Wiley's reports. In the event Mr. Wiley becomes aware that the respondent has violated the Kansas Rules of Professional Conduct or other rules of the Kansas Supreme Court, Mr. Wiley shall immediately report such violations to the Disciplinary Administrator.

7.   Mr. Wiley shall monitor the following:

   i.   the status of each case on the respondent's case list and whether the respondent is diligently representing his clients;

   ii.   the respondent's docketing system;

   iii.   the respondent's management of discovery;

   iv.   the respondent's trust account;

   v.   the respondent's responses to client's requests for information and whether the respondent is otherwise providing adequate communication with his clients; and

   vi.   the views of the local judges as to their evaluation of the respondent's performance.

8.   The respondent shall furnish Mr. Wiley with a copy of any notice of appeal filed by him during the period of his probation.

9.   The respondent shall furnish Mr. Wiley with a complete inventory, including case name, case number, client name, subject matter, and pending deadlines. The respondent shall keep all meetings scheduled with Mr. Wiley.

10.   The respondent shall submit to all testing recommended by the Kansas Lawyer's Assistance Program (KLAP) to determine whether he is in need of further assessment and/or treatment for clinical depression. In the event such testing indicates such a need, the respondent will execute a monitoring agreement with KLAP and obtain such further assessments, counseling, and treatment as recommended by KLAP or the evaluator. The respondent shall execute release forms to allow his treatment providers, if any, to communicate with Mr. Wiley and the Disciplinary Administrator.

11.   The respondent shall maintain a competent nonlawyer office staff, consisting at least of a paralegal/office manager employed for no less than 16 hours per week. The paralegal/office manager

shall assist the respondent in communicating with clients, maintaining an adequate calendaring system, reminding the respondent of upcoming deadlines, and other professional responsibilities of the respondent. The paralegal/office manager shall be charged with the task of reminding the respondent of calls and letters to the office which need to be acknowledged and shall remind the respondent on repeated occasions in those instances where it appears that he has not yet acknowledged the inquiries directed to his office. While it is the duty of the paralegal/office manager to assist the respondent in his practice of law, the responsibility of providing competent and diligent representation and complying with the Kansas Rules of Professional Conduct rests solely with the respondent.

12. The respondent shall control client intake so as to not overtax his office capacity to responsibly serve all clients at all times. In addition, the respondent shall not attempt to conduct appellate court work in more than two cases at any one time without consultation with and prior approval of Mr. Wiley.

13. In addition to the standard continuing legal education requirements, the respondent will attend at least 3 additional hours of continuing legal education on appellate practice in each reporting period during the period of probation.

14. In the event the respondent fails to comply with one or more terms and conditions of probation, the respondent shall immediately inform Mr. Wiley and provide the Disciplinary Administrator with an affidavit setting forth each failure.

15. After receiving an affidavit from the respondent or upon receiving any other creditable evidence that the respondent has violated one or more probation conditions, the Disciplinary Administrator may proceed as provided in Kansas Supreme Court Rule 211(g)(9) (2004 Kan. Ct. R. Annot. 275).

It Is Further Ordered that this opinion be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.

Lockett, J., Retired, assigned.