# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 59

APRIL TERM, A.D. 2015

April 16, 2015

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.                                                            D-14-0007

DION J. CUSTIS, WSB #6-2674,

Respondent.

## ORDER OF PUBLIC CENSURE

[¶1]    Attorney Dion J. Custis objects to the Report and Recommendation for public censure by the Wyoming State Bar Board of Professional Responsibility (BPR).  Having reviewed the Report and Recommendation and Mr. Custis's objection to it, considered the oral arguments of counsel, and performed an independent and thorough review of the BPR record, the Court concludes that Mr. Custis violated several of the Wyoming Rules of Professional Conduct and accepts the BPR's recommendation that Mr. Custis be publicly reprimanded and that he pay costs and fees.

[¶2]    Mr. Custis argued that entry of default against him violated his due process rights, and that there was insufficient evidence to prove the rule violations and recommended sanction.  This Court concludes Mr. Custis's right to due process was not violated and default was proper.

### *ISSUES*

[¶3]    1.    Did entry of default violate Mr. Custis's right to due process?

2.    Is there a factual basis for finding Mr. Custis violated the Wyoming Rules of Professional Conduct?

3.    What are the appropriate sanctions?

1

## FACTS

[¶4]   The Formal Charge arising from Mr. Custis's representation of Gilbert Ortiz, Jr. stemmed from a brief filed by Mr. Custis in the Wyoming Supreme Court appealing Mr. Ortiz's convictions on three counts of second-degree sexual abuse of a minor. *Ortiz v. State*, 2014 WY 60, 326 P.3d 883 (Wyo. 2014).  In his brief, Mr. Custis argued that the forensic interviewer, Lynn Huylar, had improperly vouched for the victim's credibility. The brief included an extensive discussion, with quotes, of Ms. Huylar's testimony. However, the testimony referred to was not Ms. Huylar's testimony in the *Ortiz* case; rather, it was her testimony in a similar case, *Seward v. State*, 2003 WY 116, 76 P.3d 805 (Wyo. 2003), in which this Court held that she improperly vouched for the victim's credibility.  No citation informed the reader that the testimony discussed had been given in *Seward* and not *Ortiz*.  The Formal Charge contained the following allegations:

> 2.   Respondent filed a brief with the Wyoming Supreme Court on behalf of the appellant in a case entitled, *Gilbert Ortiz, Jr., Appellant, v State of Wyoming, Appellee*, No. S-13-0127.  The brief contained material misrepresentations.
>
> 3.   [T]he State filed a Motion for an Expedited Stay calling to the Court's attention certain misrepresentations in the brief Respondent had filed . . . .
>
> 4.   Respondent filed a response to the State's motion . . . . Respondent claimed that the misrepresentations were simply an inadvertent, unintentional, embarrassing, typographical error.  He asked that the State's motion be denied.  He did not offer or take any steps to correct the misrepresentations . . . or to otherwise take remedial action.
>
> 5.   On September 17, 2013, the Court issued an order requiring Respondent to file a revised Appellee's Brief . . . and sanctioned Respondent the sum of $500.00.
>
> 6.   In response to Bar Counsel's disciplinary inquiry, Respondent denied that he had made any "knowing false statement" in the brief and the misrepresentation in the brief "was simply a drafting error by my paralegal."

The Formal Charge alleged that Mr. Custis's conduct violated Wyo. R. Prof. Conduct 3.3(a) (candor toward the tribunal), 5.3 (responsibilities regarding nonlawyer assistants),

2

8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), and 8.4(d) (conduct prejudicial to the administration of justice).

[¶5] The BPR also considered six exhibits, without objection from Mr. Custis:

- **Exhibit 1:** Copy of the Formal Charge in WSB No. 2013-113.

- **Exhibit 2:** Copy of Appellant's Brief in *Ortiz v. State*.

- **Exhibit 3:** Copy of the State's Motion For An Expedited Stay, in which it called to attention the misrepresentations in Mr. Custis's brief.

- **Exhibit 4:** Copy of Mr. Custis's Response of Attorney for Appellant to State's Motion for an Expedited Stay, in which he wrote in part:

> It is very clear that this quote is a quote from the *Seward* case. To suggest that counsel was deliberately trying to misquote a quote from an opinion that this Court wrote is absurd. First, the misquotes do not affect any substantive argument. Second, the misquotes do not make Appellant's arguments any less or more persuasive.

- **Exhibit 5:** Copy of the Wyoming Supreme Court's Order on Motion for Stay, in which the Court imposed a $500 sanction and required filing of a corrected brief.

- **Exhibit 6:** Copy of the Wyoming Supreme Court's opinion in *Seward v. State*, 2003 WY 116, 76 P.3d 805 (Wyo. 2003).

[¶6] On October 17, 2013, Mr. Custis was served the Formal Charge via certified mail at his address on file with the Wyoming State Bar, in accordance with § 11(e) of the Disciplinary Code for the Wyoming State Bar (Disciplinary Code).[1] Tracking information from the United States Postal Service confirmed that the mailing was received at Mr. Custis's address on October 18, 2013. Section 11(f) of the Disciplinary Code provided Mr. Custis twenty days from October 17, 2013 to serve an answer on the BPR and bar counsel. Mr. Custis failed to file an answer to either charge by November 6, 2013, the expiration of the twenty-day period.

[¶7] On November 18, 2013, bar counsel filed and served a Motion for Entry of Order of Default against Mr. Custis. Mr. Custis opposed the motion, alleging improper service under W.R.C.P. 5(b)(1) for failure to serve his attorney in the matter.[2] Mr. Custis also filed a response to the charge.

---

[1] The Disciplinary Code applicable to these proceedings is in effect until June 30, 2015.
[2] In Mr. Custis's brief, he argues that bar counsel was aware he was represented by an attorney in the disciplinary matters. He submitted a Motion to Modify Record to this Court along with correspondence

[¶8]    The BPR entered an Order of Default against Mr. Custis, and set a hearing to determine the appropriate form of discipline.  Mr. Custis's Motion for Reconsideration of Entry of Default was denied.

[¶9]    At the sanction hearing, bar counsel called the deputy attorney general who represented the State of Wyoming in the *Ortiz* appeal.  He explained that a lengthy passage from the *Seward* opinion was inserted into the *Ortiz* brief, and someone took the effort to replace *Seward's* reference to a two- to three-year old child, with a reference to "a young child," which better conformed to the facts in the *Ortiz* appeal.  When the deputy attorney general was asked his reaction to Mr. Custis's explanation that the misrepresentation was an inadvertent drafting error, he responded: "I don't see how that's possible.  A drafting error -- I don't see how a drafting error would contain that one alteration from the original in the Supreme Court's *Seward* opinion."  The deputy attorney general concluded his testimony by explaining that addressing the issue demanded extra time and resources from the Attorney General's office.

[¶10] Mr. Custis presented three witnesses: his paralegal, who assisted with the *Ortiz* brief; Donna Domonkos, an appellate attorney who worked with Mr. Custis's paralegal and reviewed the *Ortiz* brief; and Mr. Custis's office administrator.

[¶11] Ms. Domonkos testified regarding her significant experience writing and arguing appeals, and then explained her specific involvement in the *Ortiz* briefing.

> A:  Mr. Custis called me and said that he had a paralegal working with him on this Ortiz brief, and he asked me to go over it and give him some suggestions.  I did go over it, and I had quite a few suggestions. . . .  I sat down with the paralegal, and we went through different -- different things. . . .
>
> And so I went through the brief. . . .  And I can tell you, I -- I did not notice the misquote.  I didn't.

Ms. Domonkos further testified that from her interactions with the paralegal there was no indication that Mr. Custis intentionally directed the inclusion of the misrepresentation.

---

between bar counsel and his attorney.  We deny Mr. Custis's motion and will not consider evidence of the correspondence.  *See* § 21(c)(iv) of the Disciplinary Code.  ("The Court shall not receive or consider any evidence that was not presented to the BPR.").  In any case, the fact bar counsel knew that Mr. Custis was represented by counsel is not dispositive of this case.

4

[¶12] Mr. Custis's paralegal testified to his involvement in the briefing, "I was the head paralegal at the time, so I did a lot of the preliminary drafting and research." He testified that he was responsible for the misrepresented language in the brief, and it was a result of a "copy and paste mistake from a clipboard on WordPerfect." The paralegal further explained the insertion of the "young child" language resulted from an accidental copying and pasting of his "comparison notes"—facts from the *Ortiz* appeal that he was comparing to his case law research. He testified, "It was definitely inadvertently done," and when Mr. Custis found out about the error from the State's motion, he "was kind of freaking out." He concluded by explaining the error: "I feel the biggest thing with the Ortiz thing, it was a 65-page brief, and there was [sic] so many elements and everything. Like [Mr. Custis] goes over my work with a fine-toothed comb, but obviously something slipped through it."

[¶13] Mr. Custis's office administrator testified to changes in Mr. Custis's office administration following his sanction in *Board of Professional Responsibility, Wyoming State Bar v. Custis*, 2012 WY 142, 295 P.3d 334 (Wyo. 2012) (*Custis I*). She explained that the office now had better communication, weekly status meetings, and case files for every client detailing communications with the client, upcoming court dates, and client contact information.

[¶14] Mr. Custis testified to improvements in his office administration since his 2012 sanction in *Custis I*:

> I have instructed my office, my secretary, paralegal, even my runner, that there's not to be any mistakes. So I've tried to do everything I can. I've tried to improve my office policy by meeting weekly, going through, as [the office administrator] said, with the case log, making sure that there's [sic] no mistakes made on outgoing pleadings, making sure all the clients are notified, making sure there's no questions of any clients.

Mr. Custis testified to his paralegal's role in the *Ortiz* brief:

> I'm responsible for what's in the appellant brief. I take full responsibility for that.
>
> I do not direct him to simply write the brief and then that's it. I have him help me writing the brief. And that's what I did in this case. So he would write certain issues. I would write certain issues. I would give him more leeway on certain topics.

5

. . . .

> So when I read it, it read to me as a quote from Seward. I thought that's what he was referring to. I did not notice that he didn't cite to it.

[¶15] Mr. Custis emphasized he had no knowledge of the error prior to receiving the State's motion for stay, claiming he "never would have directed anything like that." Regarding his failure to immediately correct the brief upon notice from the State, Mr. Custis testified that his understanding of the appellate court rules was that he could not just submit an amended brief without leave of the Supreme Court, so he responded to the State's motion and he thought the Court would tell him what to do in its order on the motion. Mr. Custis spent the rest of his direct examination explaining how he wished the Attorney General's office would have dealt with the situation differently, and that "it was inappropriate for [the Attorney General's office] to accuse me of misconduct to the Supreme Court in a pending case." On cross-examination, Mr. Custis admitted he did not request leave of the Supreme Court to correct the brief, instead filing a seven-page opposition to the motion.

[¶16] Following the hearing, the BPR issued its Report and Recommendation, in which it found a factual basis for concluding that Mr. Custis violated Wyo. R. Prof. Conduct 3.3(a), 5.3, 8.4(c) and 8.4(d). It recommended public censure plus payment of $500.00 in administrative fees, and $1,827.72 for sanction hearing costs.

[¶17] Mr. Custis timely sought review of the BPR's Report and Recommendation.

### *ATTORNEY DISCIPLINARY PROCEDURE*

[¶18] The purposes of attorney discipline are to protect the public, maintain the integrity of the legal system, assure the fair administration of justice, and deter other lawyers from engaging in similar misconduct. *Bd. of Prof'l Responsibility v. Richard*, 2014 WY 98, ¶ 51, 335 P.3d 1036, 1051 (Wyo. 2014); *In re Abrams*, 257 P.3d 167, 169-70 (Ariz. 2011); *In re Wiederholt*, 24 P.3d 1219, 1226 (Alaska 2001). To this end, the Wyoming Supreme Court adopts and promulgates rules governing the professional conduct of attorneys, organizing the bar association, and establishing the procedure for attorney discipline. Wyo. Stat. Ann. § 5-2-118 (LexisNexis 2014).

[¶19] Attorneys admitted to the Wyoming State Bar are "subject to the exclusive disciplinary jurisdiction of this Court and the [BPR]." Disciplinary Code § 1(a).

> [T]he [BPR] is an arm of this Court whose purpose is to investigate allegations of professional misconduct and to report its findings and recommendations to the Court, which

6

is the ultimate decision-maker in attorney disciplinary matters. Sections 21(c)(iii) and (iv) of the current Disciplinary Code make it clear that the Court's determination of appropriate discipline is its own, but that the determination must be made upon the evidence that was presented to the Board at the hearing.

*Bd. of Prof'l Responsibility v. Casper*, 2014 WY 22, ¶ 8, 318 P.3d 790, 793-94 (Wyo. 2014) (quoting *Bd. of Prof'l Responsibility v. Davidson*, 2009 WY 48, ¶ 8, 205 P.3d 1008, 1012 (Wyo. 2009)). The BPR is "an ancillary body structured by the court and has no independent power, jurisdiction, or authority other than that specifically delegated to it in accordance with the Disciplinary Code." *Meyer v. Norman*, 780 P.2d 283, 288 (Wyo. 1989). While the Court "gives due consideration to the findings and recommendations of the Board, [] 'the ultimate judgment in these cases is vested in this Court.'" *Casper*, 2014 WY 22, ¶ 8, 318 P.3d at 794 (quoting *Mendicino v. Whitchurch*, 565 P.2d 460, 466 (Wyo. 1977)).

[¶20] The Disciplinary Code provides for a three-step process in disciplinary matters. First, if the Peer Review Panel makes a determination of probable cause, a formal charge is filed. Disciplinary Code § 7(c)(iii), (vi). Second, pursuant to § 19(c), the BPR must determine whether a violation of the Wyoming Rules of Professional Conduct has been proven by clear and convincing evidence. If so, the BPR then receives evidence of aggravating or mitigating factors to determine the appropriate discipline. *Id*. In the event of default, the rule violation determination need not be established by clear and convincing evidence. Instead, in addition to the default admissions, "[n]o order shall be entered . . . without the BPR being satisfied that there is a factual basis for the violation [of the rules of professional conduct.]" Disciplinary Code § 11(m). The BPR then holds a hearing "to inquire into the appropriate form of discipline." *Id*. (In the event of default, "Respondent may only be heard by the BPR regarding the form of discipline to be imposed.").

[¶21] In this case, Mr. Custis defaulted, but had entered his appearance by the time the sanction hearing was held, and was allowed to present evidence relevant to the sanction determination. We therefore weigh the evidence to determine whether there is a factual basis for finding Mr. Custis violated the Rules of Professional Conduct alleged. We then apply a clear and convincing evidence standard to the evidence regarding sanctions.

## DISCUSSION

### I. Did entry of default violate Mr. Custis's right to due process?

[¶22]        [Attorney disciplinary] proceedings are neither civil nor criminal in nature but are special proceedings, sui generis,

7

and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent.

*In re Echeles*, 430 F.2d 347, 349 (7th Cir. 1970); *see also State ex rel. Okla. Bar Ass'n v. Patterson*, 28 P.3d 551, 554 (Okla. 2001) ("A bar disciplinary proceeding is *sui generis*.").

[¶23] Nevertheless, "[d]isciplinary proceedings are adversary, adjudicatory proceedings. In as much as they are concerned with property rights of respondent-bar members, due process safeguards must be observed." *In re Thorup*, 432 A.2d 1221, 1225 (D.C. 1981) (citing *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968)). As we noted in *Penny v. State ex rel. Wyo. Mental Health Professions Licensing Bd.*, 2005 WY 117, ¶ 51, 120 P.3d 152, 175 (Wyo. 2005):

> The right to practice a licensed profession is a conditional property right protected by the due process clauses of the Constitution of the United States and the Constitution of the State of Wyoming. Procedural due process requires the applicant be given reasonable notice and a meaningful opportunity to be heard by the body which rules on his application before government action may substantially affect a significant property interest.

*Id*. (internal citations and quotation marks omitted); *see also Johnson v. Office of Prof'l Conduct*, 342 P.3d 280, 287 (Utah 2014) ("Attorneys are entitled to due process in disciplinary proceedings, including adequate notice of the charges and an opportunity to be heard in a meaningful way." (internal quotation marks omitted)). We must therefore consider whether Mr. Custis was given adequate notice and an opportunity to be heard in this case.

## A. Notice

[¶24] Section 11(e) of the Disciplinary Code provides: "Service on a respondent is complete upon mailing by certified mail, return receipt requested, a copy of the formal charge to the respondent's last known address as shown in the records of the Wyoming State Bar." The record shows that on October 17, 2013, bar counsel mailed its Formal Charge to Mr. Custis's address on record with the Wyoming State Bar, and it was received the following day.

[¶25] Mr. Custis argues that W.R.C.P. 5(b)(1) applies to service in attorney disciplinary proceedings.[3] Rule 5(b)(1) provides, "[s]ervice . . . on a party represented by an attorney is made on the attorney unless the court orders service on the party." Mr. Custis contends that his attorney was not served the formal charges, and service was therefore improper. Rule 5(a)(1) only applies to pleadings "subsequent to the original complaint." The formal charges are in the nature of a complaint and would not be served pursuant to W.R.C.P. 5 in any case. Bar counsel's method of service conformed to § 11(e) of the Disciplinary Code, and was thus proper.

[¶26] Mr. Custis further points out that no summons was attached to the Formal Charge informing him of the deadline for his response as required by W.R.C.P 4(d). Section 11(e) of the Disciplinary Code does not require that a summons be attached to the Formal Charge, and § 11(n) does not incorporate W.R.C.P. 4(d) into the Disciplinary Code. "Ignorance of the law or rules of procedure do not justify relief from an entry of default." *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 14, 45 P.3d 647, 652 (Wyo. 2002) (citing *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993)). This is particularly true in Mr. Custis's case, because he is not a stranger to the disciplinary process. *See Custis I.* Service upon Mr. Custis without a summons was proper.

[¶27] Mr. Custis was given fair notice of the proceedings against him, in accordance with the service requirements of the Disciplinary Code, thus the notice prong of due process was satisfied.

## B.  Opportunity for a Hearing

[¶28] Section 19(c) of the Disciplinary Code provides the opportunity for respondent to attend a hearing in which he may present evidence to the BPR. However, § 11(m) provides that when "the respondent fails to answer the formal charge . . . Bar Counsel may file a motion for entry of an order of default."

[¶29] Mr. Custis had the opportunity for a hearing on the rule violations and waived it through his own actions. *See Zweifel v. State ex rel. Brimmer*, 517 P.2d 493, 499 (Wyo. 1974) ("Once the default is established defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." (internal citation and quotation marks omitted)).

---

[3]  Section 11(n) of the Disciplinary Code provides: "Rules 5, 6, 7, 8, 10, 11, 15, 16, 26, 29, 30, 32, 33, 34, 35, 36, 37, 42, 45, 46, 56, 58, 60, and 61 of the Wyoming Rules of Civil Procedure shall apply to disciplinary proceedings so far as the provisions in those rules are in their natures applicable and consistent with these rules."

[¶30]  Mr. Custis argues that the mere availability of a hearing when facing potential loss of one's law license does not satisfy due process requirements.  He cites to *In re Williams*, 464 A.2d 115, 119 (D.C. 1983), in which the District of Columbia Court of Appeals held that failure to hold an *ex parte* hearing on the charges against the defaulting attorney was a due process violation.  However, there the court rested its decision not on the fact that a hearing is always required for a defaulting party, but instead on the hearing committee's findings of multiple disciplinary code violations based solely on the unsworn charges in the petition.  *Id.*  The court concluded that a defaulting attorney cannot be stripped of his law license based on a default unsupported by proof.  *Id.*  It did not, however, declare that an evidentiary hearing is mandated in all default cases.  *Id.*

[¶31]  The same court later rejected the argument that *Williams* requires an evidentiary hearing in *In re Sheih*, 738 A.2d 814 (D.C. 1999), a reciprocal discipline case.  In *Sheih*, the court found sufficient evidence of misconduct where the California State Bar had based its decision "on both the facts deemed to have been admitted by Respondent's default *and* on the additional documentary evidence submitted by the State Bar[.]"  *Sheih*, 738 A.2d at 817 (emphasis in original).  Contrary to Mr. Custis's assertion, the holdings in *Williams* and *Sheih* do not establish that an evidentiary hearing is required in disciplinary proceedings when the respondent has defaulted.  Instead, they stand for the proposition that an attorney who defaults in a disciplinary proceeding cannot be denied his or her license without a factual basis in addition to the allegations deemed admitted by virtue of the default.

[¶32]  The requirement of § 11(m) of the Disciplinary Code that upon default, "[n]o order shall be entered or recommendation made to the Court without the BPR being satisfied that there is a factual basis for the violation . . ." comports with the holding in *Williams* and *Sheih*.  In this matter, bar counsel submitted six exhibits to support a factual basis for the rule violations, in addition to the allegations deemed admitted by the default.  Mr. Custis was given an opportunity for a hearing to confront the disciplinary allegations made against him; however he lost that opportunity when he defaulted.  We conclude the hearing prong of due process was satisfied.

## C.  Alleged Prosecutorial Vindictiveness

[¶33]  Mr. Custis argues bar counsel displayed "prosecutorial vindictiveness" in pursuing discipline against him, citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) ("To punish a person because he has done what the law allows is a due process violation of the most basic sort.")  In support of his argument, he cites facts which we will not consider because they were not presented to the BPR.  *See* Disciplinary Code § 21(c)(iv).  Nevertheless, a brief explanation of the role of bar counsel in disciplinary proceedings is warranted.

[¶34] Section 6(b)(i) of the Disciplinary Code gives bar counsel the power and duty "[t]o review and investigate any complaint to determine whether a prima facie violation exists[.]" "The determination of whether or not to initiate an investigation is vested within the sound discretion of Bar Counsel[.]" *Id*. at § 6(b)(iii). This discretion is limited by the Peer Review Panel, which provides "general supervision of, guidance to, and oversight of the office of Bar Counsel[,]" and ultimately "[d]etermine[s] whether probable cause exists, justifying the filing of a formal charge[.]" *Id*. at § 7(c)(iii), (vi). Here, the Peer Review Panel issued a Finding of Probable Cause prior to bar counsel filing the Formal Charge. Bar counsel adhered to the procedural rules in the Disciplinary Code and Mr. Custis provides no admissible support for his contentions that bar counsel acted vindictively.

[¶35] We find no due process violation in the entry of default against Mr. Custis and therefore adopt the BPR's entry of order of default.

## II. Is there a factual basis for finding Mr. Custis violated the Wyoming Rules of Professional Conduct?

[¶36] As discussed above, *see supra* ¶¶ 20-21 and 30-31, in disciplinary proceedings we do not rely on default alone to determine that a rule violation has occurred. In addition to the allegations deemed admitted by default, Disciplinary Code §11(m) requires us to find a factual basis for the violation. In the context of attorney discipline, a "factual basis" exists when "the record contains evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise." *In re Disciplinary Proceedings Against Bonet*, 29 P.3d 1242, 1247 (Wash. 2001) (internal citation and quotation marks omitted). Although this is sometimes referred to as "substantial evidence," we reject bar counsel's contention that we should apply a substantial evidence standard of review to the BPR's findings and conclusions. The Court conducts a *de novo* review of all aspects of attorney discipline.

### A. Violations of Wyoming Rules of Professional Conduct

#### 1. Candor toward the tribunal—Wyo. R. Prof. Conduct 3.3(a)

[¶37] Wyo. R. Prof. Conduct 3.3(a) provides: "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;" and "(3) offer evidence that the lawyer knows to be false." Comment 5 to Rule 3.3 provides in part: "Paragraph (a)(3) requires that the lawyer refuse to offer evidence that the lawyer knows to be false . . . . This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence."

11

[¶38]  The following allegations from the Formal Charge are deemed admitted: (1) Mr. Custis filed a brief with the Wyoming Supreme Court in *Ortiz v. State*, 2014 WY 60, 326 P.3d 883 (Wyo. 2014), containing material misrepresentations; (2) the State filed a motion for stay calling this Court's attention to the misrepresentations; (3) Mr. Custis responded to the motion contending the misrepresentations were unintentional typographical errors; (4) pursuant to an order by this Court, Mr. Custis corrected the error and submitted a revised brief to the Court; and (5) in response to a disciplinary inquiry regarding the misrepresentation, Mr. Custis claimed to have no knowledge of the misrepresentation and explained the incident as a drafting error by his paralegal.  Mr. Custis's brief and the opinion of this Court in *Seward* provide a factual basis for these allegations.  We agree with the BPR's conclusion on this issue:

> 18.  With regard to Respondent's insistence that the misrepresentation contained in the *Ortiz* brief he signed and submitted to the Wyoming Supreme Court was simply a typographical error of which Respondent was unaware at the time the brief was filed, Rule 1.0(g) provides, "A person's knowledge may be inferred from the circumstances."  Rule [3.1(c)][4] provides in relevant part, "The signature of an attorney constitutes a certificate by him that he has read the pleading, motion or other court document; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well-grounded in fact[.]"

There is a factual basis for concluding Mr. Custis violated Rule 3.3(a).

## 2.  Responsibilities regarding nonlawyer assistants—Wyo. R. Prof. Conduct 5.3

[¶39]  Rule 5.3(c)(2) provides in pertinent part:

> [A] lawyer shall be responsible for conduct of such person that would be a violation of the Rules of Professional Conduct if engaged in by the lawyer if . . . the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take remedial action.

---

[4] In its Report and Recommendation, the BPR mistakenly cited Rule 3.3(c).

Comment 1 to Rule 5.3 provides: "The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline." While the record contains no basis to conclude that Mr. Custis had actual knowledge of his paralegal's misrepresentations, Mr. Custis's signature on the brief certified "that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [t]he . . . factual contentions have evidentiary support[.]" W.R.C.P. 11(b)(3). When Mr. Custis signed the brief, he took responsibility for knowing the accuracy of the contents of the document. Mr. Custis cannot simply claim ignorance to avoid his responsibility for his paralegal's work product. We conclude that a factual basis exists to find Mr. Custis violated Rule 5.3(c).

### 3. Conduct involving dishonesty, fraud, deceit or misrepresentation—Wyo. R. Prof. Conduct 8.4(c)

[¶40] Wyo. R. Prof. Conduct 8.4(c) provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." It is undisputed that the *Ortiz* brief contained portions of the *Seward* opinion, without citation, which misrepresented the testimony of an important witness. We conclude there is a factual basis to conclude Mr. Custis violated Rule 8.4(c). *See Bd. of Prof'l Responsibility v. Stith*, 2011 WY 69, 262 P.3d 847, 851 (Wyo. 2011) (attorney violated Rule 8.4 when he signed discovery pleading which failed to provide required insurance coverage information); *In re Finestrauss*, 32 A.3d 978, 982 (Del. 2011) (violation of Rule 8.4(c) for submitting to the Court documents with misrepresentations relating to tax obligations).

### 4. Conduct prejudicial to the administration of justice—Wyo. R. Prof. Conduct 8.4(d)

[¶41] Wyo. R. Prof. Conduct 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Mr. Custis admits that he submitted a brief to this Court containing material misrepresentations, and the misrepresentation is apparent on the face of the brief. If this Court had relied on these misrepresentations it would have impacted a central issue in the *Ortiz* appeal. Furthermore, addressing the misrepresentation caused undue delay and wasted resources of the State and this Court. We find a factual basis for concluding that the misrepresentation was prejudicial to the administration of justice and Mr. Custis violated Rule 8.4(d).

### III. *What are the appropriate sanctions?*

[¶42] When a respondent defaults on the charges, but appears at the sanction hearing, as Mr. Custis did, we determine the sanctions based on clear and convincing evidence. "Clear and convincing evidence is 'that kind of proof that would persuade a trier of fact

that the truth of the contention is highly probable.'" *Richard*, 2014 WY 98, ¶ 53, 335 P.3d at 1052 (quoting *SMH v. State*, 2012 WY 165, ¶ 19, 290 P.3d 1104, 1109 (Wyo. 2012)); *see also Mendicino*, 565 P.2d at 475.

[¶43] To determine the appropriate sanctions, we look to the ABA Standards for Imposing Lawyer Sanctions (1992) (ABA Standards). In *In re Discipline of Longacre*, 122 P.3d 710 (Wash. 2005), the Washington Supreme Court explained this process:

> [T]he court engages in a two-step process utilizing ABA Standards. First, the presumptive sanction is determined by considering: (1) the ethical duty violated, (2) the lawyer's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. Second, the court considers any aggravating or mitigating factors that may alter the presumptive sanction or affect the duration of a suspension.

*Id*. at 719 (citation omitted); *see also* ABA Standards 3.0 and *In re Shea*, 273 P.3d 612, 622 (Alaska 2012).

### 1. The lawyer's mental state

[¶44] The ABA Standards define three levels of mental states:

> "Intent" is the conscious objective or purpose to accomplish a particular result.

> "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

> "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

ABA Standards, III. Standards for Imposing Lawyer Sanctions: Black Letter Rules.

[¶45] The BPR did not reach any conclusions regarding Mr. Custis's mental state. With regard to Mr. Custis's violations of Wyo. R. Prof. Conduct 3.3(a), 5.3, 8.4(c), and 8.4(d), we conclude Mr. Custis's violations comport with the ABA's definition of a negligent mental state: "when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that

a reasonable lawyer would exercise in the situation." ABA Standards, Theoretical Framework. The testimony of Mr. Custis, his paralegal, and Ms. Domonkos indicates that Mr. Custis was not aware of the misrepresentation until the State filed its motion for stay.

### 2. Potential or actual injury caused by misconduct

[¶46] The ABA Standards define "injury" as follows:

> [H]arm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.

ABA Standards, III. Standards for Imposing Lawyer Sanctions: Black Letter Rules. "Potential injury" is:

> [H]arm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but from some intervening factor or event, would probably have resulted from the lawyer's misconduct.

*Id*.

[¶47] We find clear and convincing evidence supporting the BPR's determination that Mr. Custis caused actual injury to the State and the judiciary, and adopt its finding:

> 23. Based upon the clear and convincing evidence . . . Respondent's misconduct caused actual injury to the judicial system. Because of the misrepresentations contained in the brief filed by Respondent, the State expended significant time researching, drafting and filing the Motion for Expedited Stay. The Court expended its resources in reviewing the motion, Respondent's response and ruling on the motion.

### 3. Duties violated and presumptive sanction

[¶48] Mr. Custis's violation of Rule 5.3 falls under the ABA Standards 7.0, "Violations Of Other Duties Owed As A Professional." Considering Mr. Custis acted negligently and caused actual injury to the judiciary, our presumptive sanction is reprimand. ABA Standards 7.3.

[¶49] Mr. Custis's violation of Rules 3.3(a), 8.4(c), and 8.4(d) fall under the heading "Violations of Duties Owed to the Legal System," specifically, ABA Standard 6.1, "False Statements, Fraud, and Misrepresentation." Because Mr. Custis acted negligently and caused actual injury to the judiciary, our presumptive sanction determination is reprimand.

> 6.13 Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

ABA Standards 6.13.

### 4. Aggravating and mitigating factors warranting adjustment of presumptive sanction

[¶50] "Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *In re Johanning*, 111 P.3d 1061, 1065 (Kan. 2005). ABA Standard 9.22 lists factors which may be considered in aggravation:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

[¶51] ABA Standard 9.32 lists the following factors that may justify reduction of the degree of discipline:

(a) absence of prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse . . . ;
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.

[¶52] The BPR found three aggravating factors: (1) prior disciplinary record, (2) multiple offenses, and (3) substantial experience in the practice of law. In addition, the BPR found one mitigating factor, the previously imposed $500 sanction from this Court.

[¶53] There is clear and convincing evidence of Mr. Custis's prior disciplinary record. In *Custis I*, Mr. Custis offered a $15,000 "inducement" to the mother of a sexual abuse victim in exchange for the mother's agreement to recommend to the sentencing court that Mr. Custis's client receive a suspended sentence and no prison time for his guilty plea to first-degree sexual abuse of a minor. 2012 WY 142, 295 P.3d at 336. Mr. Custis was publicly censured, and required to take a continuing education in ethics course as sanctions in that matter. *Id*. at 351.

[¶54] We do not agree there were "multiple offenses" in the *Ortiz* matter. Rather, Mr. Custis committed one offense which violated several rules. The Washington Supreme Court has explained the distinction:

> Longacre's conduct, as limited and discrete as it was, viewed as a whole, does not rise to the level of egregiousness justifying a finding of "multiple offenses." In virtually any attorney discipline case, multiple counts are commonly charged simply because most discrete behaviors violate more than one [rule of professional conduct]. Surely, the ABA Standards and this court never intended that *all* attorneys

17

charged with multiple counts of misconduct be subject to the "multiple offenses" aggravating factor. The test for "multiple offenses" must require something more.

*In re Discipline of Longacre*, 122 P.3d at 726 (emphasis in original). Mr. Custis filed a brief containing material misrepresentations. Though this conduct violated more than one rule of professional conduct, it does not constitute "multiple offenses."

[¶55] Mr. Custis has been licensed to practice law since 1994, providing clear and convincing evidence of his substantial experience in the practice of law. *See In re Disciplinary Proceeding Against Ferguson*, 246 P.3d 1236, 1250 (Wash. 2011) ("substantial experience" factor applicable when lawyer has practiced 10 or more years at the time of misconduct).

[¶56] "[T]here is no magic formula for determining how aggravating and mitigating circumstances affect an otherwise appropriate sanction." *In re Disciplinary Matter of Friedman*, 23 P.3d 620, 633 (Alaska 2001) (internal quotation marks omitted). In determining the appropriate sanction, we must balance the rehabilitative and deterrent purposes of attorney discipline. "[W]e view discipline as assisting, if possible, in the rehabilitation of an errant lawyer." *In re Scholl*, 25 P.3d 710, 712 (Ariz. 2001). "[T]he discipline must be fair to the attorney, with the object of correcting the wayward tendency in the accused lawyer while offering . . . a fair and reasonable opportunity for rehabilitation." *The Florida Bar v. Cox*, 794 So.2d 1278, 1286 (Fla. 2001) (internal quotation marks omitted). Although attorney discipline can serve to improve the performance of attorneys who have strayed in performing their ethical obligations, when an attorney continues to engage in professional and ethical misconduct in spite of previous sanctions, our concern weighs more heavily toward deterrence, maintaining the integrity of the legal system, and protecting the public. This Court's decision in *Custis I* was published on November 7, 2012. Even assuming he made no changes in his office procedures until that date, some of Mr. Custis's misconduct occurred after, he contends, he made improvements to his procedures to avoid any further discipline.

[¶57] We adopt the BPR's recommendation of a public censure for Mr. Custis's rule violations. We adopt the BPR's recommendation on fees and costs, ordering Mr. Custis to pay $500.00 in administrative fees and $1,827.72 in sanction hearing costs.

***IT IS HEREBY ORDERED:***

[¶58] 1.  The Report and Recommendation for Public Censure, filed by the BPR on June 17, 2014, is hereby approved and adopted, as modified by this order; and

2.  Dion J. Custis shall receive a public censure; and

18

3.    By June 1, 2015, Dion J. Custis shall pay costs of $1,827.72 associated with the disciplinary proceedings and an administrative fee of $500.00.

[¶59]  **DATED** this 16th day of April, 2015.

**BY THE COURT:\***

/s/ _____
**E. JAMES BURKE**
**Chief Justice**

**\***Justice Hill took no part in the consideration of this matter.  Judge Timothy C. Day participated by assignment.