No. 90,704

In the Matter of DONALD J. FRANCIS, *Respondent.*
(79 P.3d 1285)

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Donald J. Francis*, respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline. The hearing panel found respondent Donald J. Francis violated Kansas Rule of Professional Conduct (KRPC) 1.4 (communication) (2003 Kan. Ct. R. Annot. 349) and KRPC 1.5 (fees) (2003 Kan. Ct. R. Annot. 362). Francis does not contest these findings.

The formal complaint also alleged Francis violated KRPC 1.15 (safekeeping property) (2003 Kan. Ct. R. Annot. 395), KRPC 8.1 (bar admission and disciplinary matters) (2003 Kan. Ct. R. Annot. 459), and Rule 207(b) (duty to assist investigator) (2003 Kan. Ct. R. Annot. 250). One member of the hearing panel would have found a violation of KRPC 8.1. Otherwise, the panel found no violations of these provisions.

### Factual Background

In summary, the hearing panel made the following findings of fact:

In April 1997, Francis was hired to represent Donna Torrez in a personal injury action arising out of a car accident. Francis filed the action and settled the case for $6,000 with the defendant driver's insurance company, Shelter Insurance Company (Shelter).

Torrez was to receive $866.31 from the settlement proceeds after payment of her insurance company's personal injury protection (PIP) lien and Francis' fees. Francis had entered into an agreement with the PIP carrier to protect its lien; he was to receive ⅓ of the lien amount as his fee.

On September 15, 2000, Francis had Torrez sign a Shelter settlement check and gave her a check for $866.31 from a trust ac-

count. He directed her to wait to cash the trust account check for 3 weeks. Torrez deposited the check after 1 month, and the check was returned for insufficient funds.

Francis claimed that he sent three letters to the PIP carrier in late 2000. First, he contended, he sent the Shelter settlement check to the PIP carrier for endorsement. He later sent two more letters asking when he "could expect to receive the endorsed settlement check." The PIP carrier has no record of these three letters from Francis. Francis' records include copies of only the second and third letters.

Torrez sent a certified letter to Francis on October 23, 2000. She requested a certified check for her share of the settlement, as well as reimbursement to cover the certified mail fee and the fees she incurred because of the returned trust account check. Francis did not respond promptly.

Francis' records include copies of two letters he contended that he sent to Torrez: one on February 1, 2001, updating her on the status of the settlement proceeds, and one on March 28, 2001, informing her that the PIP carrier never returned the Shelter settlement check with the carrier's endorsement. Torrez stated she never received either of these two letters.

An agent of the PIP carrier sent a letter to Francis on February 8, 2001, requesting information regarding the status of the settlement. Francis did not respond.

On March 28, 2001, Francis wrote to Shelter, requesting that it issue a second settlement check.

In May 2001, the PIP carrier wrote a second letter to Francis, requesting information on the status of the settlement. Again, Francis did not respond.

In July 2001, Shelter sent a second settlement check to Francis, which he then forwarded to the PIP carrier. The PIP carrier lost this second check, and Francis wrote a letter to Torrez, updating her on this development. Torrez received this letter.

In August 2001, Shelter sent a third settlement check to the PIP carrier. The PIP carrier endorsed this third check and forwarded it to Francis on August 17, 2001. Francis sent a letter to Torrez on

the same day, informing her about the third check. She received this letter.

On August 22, 2001, Francis and Torrez met at a bank. Francis gave Torrez a check for $866.31 and a letter describing Francis' fees. Francis did not inform Torrez "that she had the right to have the Respondent's fee reviewed by a district court."

### Disciplinary Proceedings

Torrez filed her complaint with the Disciplinary Administrator's office on April 14, 2001. The Deputy Disciplinary Administrator sent a letter to Francis, which enclosed a copy of Torrez' complaint. This letter requested a written response within 20 days. Francis did not provide a response within that time frame.

The case was referred to the Johnson County Ethics and Grievance Committee for investigation, and Gregory Kincaid was assigned as the investigator. Kincaid requested a personal interview with Francis several times, and Francis agreed to meet with Kincaid on June 20, 2001. Francis canceled the interview, and it was rescheduled for June 25, 2001.

Francis did not appear at the interview on June 25 and called on June 26 to inform Kincaid that he had been ill. At that time, Kincaid requested a copy of Francis' records, including his trust account records for October 2000.

The records were not sent to Kincaid. Kincaid then called Francis, leaving him a message on July 25, 2001. Kincaid said that he thought Francis was not cooperating with the investigation and again requested a copy of Francis' records and a personal interview. Kincaid followed up this message by sending a letter to Francis. Francis did not send his records to Kincaid.

A Special Investigator for the Disciplinary Administrator's office contacted Francis on July 17, 2002, requesting a written response to the initial complaint. On July 31, 2002, Francis provided the response.

### Relevant Rules and Hearing Panel Conclusions

Rule 1.4 provides that "[a] lawyer shall keep a client reasonably

informed about the status of a matter and promptly comply with reasonable requests for information."

The hearing panel concluded Francis violated Rule 1.4 by failing to return Torrez' telephone calls in a timely way and by failing to respond to her written requests for information. In addition, the panel concluded Francis failed to respond to the written requests of the PIP carrier.

KRPC 1.5(d) provides in pertinent part that "[a] fee may be contingent on the outcome of the matter for which the service is rendered . . . . Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement . . . [that] shall advise the client of the right to have the fee reviewed."

The panel concluded that Francis did not inform Torrez of her right to have his fee reviewed, in violation of KRPC 1.5.

One member of the hearing panel also would have concluded Francis violated KRPC 8.1 on bar admission and disciplinary matters. He regarded Francis' version of events, *i.e.*, that numerous letters were sent and yet undelivered, as incredible. The majority of the panel did not agree the Disciplinary Administrator had established by clear and convincing evidence that Francis falsified his records after the investigation started by inserting letters never sent to Torrez or the PIP carrier into his file. These two members of the panel were content to admonish Francis for a lack of diligence in responding to the Disciplinary Administrator.

None of the members of the hearing panel concluded that Francis violated KRPC 1.15, because he did not commingle funds or convert Torrez' funds. The panel cautioned, however, that a lawyer should not knowingly write checks on a "trust account, or any account, for which there are not funds in the account to cover the check at the time it is written." Because the panel determined that this conduct was not charged, it did not find a violation on this basis. The panel also concluded there was no violation of Rule 207(b).

Regarding sanctions, the members of the hearing panel took into consideration factors outlined by the American Bar Association (ABA) in its Standards for Imposing Lawyer Sanctions. They found

only one aggravating and one mitigating factor. In the panel's view, Francis' situation was aggravated by his prior disciplinary offense.

The respondent was on disciplinary probation at the time the events underlying this proceeding took place. His probation had arisen out of violations of KRPC 1.3 (diligence) (2003 Kan. Ct. R. Annot. 336), KRPC 1.4 (communication) (2003 Kan. Ct. R. Annot. 349), KRPC 1.16 (declining or terminating representation) (2003 Kan. Ct. R. Annot. 407), and KRPC 3.2 (expediting litigation) (2003 Kan. Ct. R. Annot. 420). See *In re Francis,* 269 Kan. 178, 4 P.3d 579 (2000). We note that one of the conditions of probation in his prior disciplinary case was that respondent was directed not to violate KRPC.

Francis' situation was mitigated by evidence of his previous good character and reputation, as shown by letters from three members of his community, a news editor from Gardner and two attorneys, including the attorney who was his probation supervisor.

Two members of the hearing panel recommended that Francis be suspended from the practice of law for 6 months. The remaining panel member joined in that recommendation but argued for the more serious sanction of suspension of not less than 1 year, in view of his belief that respondent also violated KRPC 8.1. This member also recommended that Francis should be subjected to a fitness hearing before any reinstatement, because Francis had mentioned that the proceedings caused a reoccurrence of depression.

Costs were assessed to the respondent in an amount certified by the office of Disciplinary Administrator.

Our review of this matter satisfies us that the panel's factual findings and conclusions that respondent violated KRPC 1.4 (communication) (2003 Kan. Ct. R. Annot. 349) and KRPC 1.5 (fees) (2003 Kan. Ct. R. Annot. 362) were supported by clear and convincing evidence. Although we do not conclude there was an additional violation of KRPC 8.1, we agree with the hearing panel's concurring member that the unique circumstances of this case merit a sanction beyond 6 months' suspension.

As the ABA Standards state:

"4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

"8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

Both of the Standards speak to the facts before us. Francis knowingly failed to follow up on the settlement check problem and was, at a minimum, dilatory in responding to his client. This caused at least potential, if not actual, injury. He also was sanctioned for communication failures in the past.

IT IS THEREFORE ORDERED that Donald J. Francis be and he is hereby suspended from the practice of law in the state of Kansas for a period of 1 year, effective on the filing date of this order.

IT IS FURTHER ORDERED that Donald J. Francis shall comply with Supreme Court Rule 218 (2003 Kan. Ct. R. Annot. 286); at the end of the 1-year suspension, respondent will be reinstated upon furnishing proof of compliance with this rule as well as his obligations for registration and continuing legal education to the Clerk of the Appellate Courts.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that costs be assessed against the respondent in the amount certified by the office of the Disciplinary Administrator.