[¶1] This matter comes before the Court upon a Report and Recommendation for Order of Public Censure filed on February 9, 2018, by the Board of Professional Responsibility of the Wyoming State Bar (BPR), and Bar Counsel's Objections to Report and Recommendation filed on February 27, 2018. The BPR concluded that Mr. Hiatt violated Rules 1.3, 1.4, 1.5, and 1.16 of the Wyoming Rules of Professional Conduct and recommended public censure and payment of costs and fees. Bar Counsel objects, contending that the appropriate sanction should include a 30-day suspension because Mr. Hiatt has been publicly censured for similar conduct in the past. Having considered the report and recommendation and Bar Counsel's objections, having reviewed the BPR's record and the transcript of the hearing before the BPR, and being fully informed in the premises, this Court finds and concludes that the record before the BPR establishes by clear and convincing evidence that Mr. Hiatt violated the Wyoming Rules of Professional Conduct. We reject the BPR's recommendation for censure, impose a 30-day suspension, and require Mr. Hiatt to reimburse unearned fees to his client and pay fees and costs to the State Bar.
ISSUES
[¶2] 1. Does the record contain clear and convincing evidence that Mr. Hiatt violated Rules 1.3, 1.4, 1.5, 1.15, or 1.16 of the Wyoming Rules of Professional Conduct?
2. What is the appropriate discipline?
FACTS
[¶3] Mr. Hiatt has been licensed to practice law in Wyoming since 1998, and he maintains a law practice in Rock Springs, Wyoming. This matter arises from his representation of Kyle Dudzik, who contacted Mr. Hiatt in early February 2016 regarding his desire to obtain custody of his son. On March 2, 2016, Mr. Hiatt entered an attorney-client relationship with Mr. Dudzik. They executed an Attorney-Client Fee Agreement under which Mr. Hiatt agreed to perform the work for a $3,000.00 "non-refundable flat fee." The agreement provided that Mr. Dudzik would "pay $250.00 per week by Friday of each week, until the $3000.00 BALANCE IS PAID IN FULL." Mr. Dudzik fell behind in his payments and ultimately paid the balance due after Mr. Hiatt threatened to withdraw from the case.
[¶4] Mr. Hiatt did not wait until the fee was paid to commence work on Mr. Dudzik's matter. On March 22, 2016, he filed a petition to modify the decree of paternity which sought custody of Mr. Dudzik's son. Mother hired attorney Bobby Pineda, and on April 7, 2016, he delivered to Mr. Hiatt a filed answer and counterclaim, along with a proposed temporary visitation agreement. On April 14, 2016, Mr. Hiatt filed an answer to the counterclaim, an emergency motion for temporary *942 custody, and a motion for expedited temporary motions hearing. Four days later, Mr. Pineda sent an email to Mr. Hiatt regarding his filings and the use of a guardian ad litem (GAL):
Rob,
I received your motion for an emergency hearing. I don't believe there is any emergency at this point. The majority of your allegations relate to matters prior to the birth of the minor child and are not reflective of the current situation.
However, it being a Judge James case, she is going to require a Guardian Ad Litem prior to any hearing on temporary custody. Who would you suggest? I would be fine with Tim Eagler or Rob Spence. I don't think Tammy Harris is taking new cases at this point. Maybe if we finished Salgado she would take this one on.
Thanks,
Bobby
On April 25, 2016, Mr. Hiatt replied:
I met with my Client and expressed your concerns about a GAL. I did not know [R]ob Spence was doing GAL work. No motion for GAIL [sic] is pending but my motion is. [I] still want a hearing scheduled to get all of that resolved. I have not heard from the court yet on possible hearing dates but [I] will let you know when I do. [T]hanks Rob H.
On May 19, 2016, Mr. Hiatt again contacted Mr. Pineda regarding the use of a GAL:
Bobby [I] just met with my client and we would prefer to use [T]im [E]agler as [GAL] if we have to go that direction, which it appears we do. Thanks Rob H
Mr. Hiatt did not serve initial disclosures 30 days after he received Mother's answer, as required by W.R.C.P. 26(a) (1.3). Consequently, on June 16, 2016, Mr. Pineda sent Mr. Hiatt a letter requesting he do so. The letter also enclosed combined interrogatories, requests for production and requests for admission to be answered by Mr. Dudzik. Initial disclosures were prepared and were signed by Mr. Dudzik on July 14, 2016. Mr. Dudzik and Mr. Hiatt also prepared answers to Mother's interrogatories, requests for production, and admissions. Mr. Dudzik hand-delivered his initial disclosures, his confidential financial affidavit, and his answers to Mother's discovery requests to Mr. Pineda's office on August 3, 2016. That day, Mr. Pineda and Mr. Hiatt exchanged emails confirming receipt of the discovery and discussing the possibility of a GAL.
[¶5] During the month of August, Mr. Hiatt and Mr. Dudzik exchanged emails concerning records of Mother's convictions in Colorado and attempting to clarify answers to interrogatories that had been questioned by Mr. Pineda. Regarding the discovery issue, Mr. Pineda served an initial draft instead of the final draft of interrogatories that he had prepared; thus, when he read the answers, they did not align with his final draft. Accordingly, on August 16, 2016, he sent a letter to Mr. Hiatt describing his issues with the answers.[1] Mr. Hiatt forwarded the concerns to Mr. Dudzik, who responded in an email on August 29, 2016. In his response, Mr. Dudzik expressed frustration that Mr. Pineda was "trying to make [him] look bad" and stated that he is "ready for this to be in trial." That same day, Mr. Hiatt sent the following email to Mr. Dudzik:
Dear Kyle:
You are in breach of the employment contract with this firm. Payment terms as agreed to were:
1. I agree to pay The Firm its non-refundable flat fee in the amount of $3000.00. I understand The Firm has not accepted my case and will not act as my attorney until I have signed this agreement and paid the fee. Will pay $250.00 per week by Friday each week, until $3000.00 BALANCE IS PAID IN FULL.
And
8. I agree that The Firm is not required to complete work on my case and that it may withdraw as my attorney at any time if I fail to comply with the exact terms of this agreement. I understand The Firm will send written notice of *943 intent to withdraw. The Firm shall recite as the basis for the withdrawal that there has been a breakdown in the attorney-client relationship.
Your payment should have been completed by 5/20/2016, however, your last payment towards your delinquent balance was made on 8/3/2016 which left a balance outstanding of $1150.00. [I]f the open balance of $1150.00 is not paid in full by the end of business on Friday September 2, 2016, I will file a motion to withdraw from this case as stated above.
Mr. Dudzik responded with an email the next day, indicating that he had obtained a loan and would be dropping off the remaining balance in Mr. Hiatt's mailbox that evening. He testified that he made the payment as promised on the evening of August 30.
[¶6] On September 6, 2016, Mr. Dudzik emailed Mr. Hiatt asking him, "What's the plan going forward?" In his September 7, 2016 response, Mr. Hiatt addressed the criminal records issues and then explained, "[T]he plan is to deal with [B]obby problems [interrogatory confusion] next week some time and to plan not to use a [GAL] and just go for a final hearing and show the judge her history and your testimony about how she is unfit to have custody." Mr. Dudzik responded the same day, asking "What are the chances we get a hearing without a [GAL]? And do you think that's the best route?" On September 20, 2016, Mr. Dudzik again emailed Mr. Hiatt, inquiring, "What's the latest? Interrogatories?" One week later, Mr. Dudzik again emailed Mr. Hiatt, questioning him, "What's the latest with things?" Mr. Hiatt did not respond to any of these emails.
[¶7] As these events were unfolding, Mr. Hiatt was in negotiations with Bar Counsel regarding his conduct in representing a different client. On September 29, 2016, Mr. Hiatt signed an affidavit in which he conditionally admitted to violating Rules 1.3 (diligence), 1.4 (communication with client), and 1.16 (duties upon termination of representation). On November 1, 2016, this Court issued an Order of Public Censure containing the following press release:
The Wyoming Supreme Court issued an order of public censure of Rock Springs attorney Robert W. Hiatt Jr. The disciplinary order resulted from Hiatt's representation of a client in a child custody and visitation modification matter. The client paid a $5,000.00 flat fee at the outset. Hiatt neglected to pursue the matter diligently and failed to maintain adequate communication with his client, who ultimately terminated Hiatt's representation and retained other counsel. After the client discharged Hiatt, Hiatt failed to return the unearned portion of the fee and failed to cooperate with the client and his new counsel in transferring the file. Hiatt agreed that he committed multiple violations of Rule 1.3 (diligence) and Rule 1.4 (communication with client). He also agreed that he violated Rule 1.16 (termination of representation) in failing to return the unearned portion of the fee and in failing to cooperate with the transfer of the file to replacement counsel. Hiatt agreed to return $3000.00, representing the unearned portion of the fee, to the client. Hiatt stipulated to a public censure in the matter, which was approved by the Board of Professional Responsibility and submitted to the Court. In addition to receiving a public censure, Hiatt was ordered to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.
[¶8] Despite his September indication to his client that they would try to proceed without a GAL, in his October 17, 2016 letter to Mr. Pineda (responding to Mr. Pineda's August 16 letter regarding the interrogatory confusion), Mr. Hiatt wrote, "Additionally, we need a decision if we are going to do a GAL (we still prefer Tim [Eagler] ) or if we can just set this for a final hearing." Mr. Pineda did not respond to this letter, and there is nothing in the record to indicate that Mr. Hiatt followed up with that communication. Mr. Pineda testified that generally the party with "the more urgent issue," in this case, Mr. Dudzik (because he was seeking the change in custody), would carry the "burden to file the motion and get the process going" to have a GAL appointed. That was never *944 done.[2]
[¶9] From October through early November 2016, Mr. Hiatt and Mr. Dudzik exchanged several emails discussing potential changes in child support based upon a decrease in Mr. Dudzik's income and job changes for Mother. On November 30, 2016, Mr. Dudzik emailed Mr. Hiatt asking, "Anything new?" Mr. Hiatt did not respond. On December 6, 2016, Mr. Dudzik again emailed Mr. Hiatt, "Nothing from [B]obby yet? All I see is them delaying more and more." Mr. Hiatt responded, "Nothing from anyone." Mr. Dudzik replied, "Anything you can do to try to get something going? The no response by them for months at a time is pretty old." Mr. Hiatt did not respond.
[¶10] The record reveals no communications between Mr. Hiatt and Mr. Dudzik and no work performed by Mr. Hiatt between December 6, 2016 and February 8, 2017. On February 8, 2017, Mr. Dudzik sent the following email to Mr. Hiatt:
Rob,
Don't you think this has been going on long enough? It has been months since anything has happened on Bobby's end. Can we write him a letter? Reach out to the courts saying we're not getting a response? Anything?
[¶11] Again, Mr. Hiatt did not respond. Mr. Dudzik testified that he called Mr. Hiatt on February 15, 2017, and left a voicemail asking Mr. Hiatt to return his call as soon as possible. As of February 20, 2017, Mr. Dudzik still had not heard from Mr. Hiatt, so he sent Mr. Hiatt a letter terminating his representation:
Dear Mr. Hiatt:
I am writing to inform you that I am no longer seeking your counsel in the matter of my child custody case. The legal relationship has been terminated, effective immediately.
You have been my attorney for more than eleven months and to date I have spent $3,000 and have seen very little to no progress. I have emailed as recently as February 8, 2017 to once again receive no response. I followed up with a phone call on February 15, 2017 and to no avail had to leave a message and have not received a call back or email. I feel you have been completely uninvolved in this case and you have put it on the backburner.
Due to my desire to protect my child, I felt it necessary to obtain your counsel to fight for my desires, which has not happened in a timely manner. I am requesting for you to send my complete file to [Mr. Dudzik's address]. I am also seeking FULL reimbursement of the balance. I feel this is reasonable because all we have done is file a limited amount of paperwork and exchange a few emails between yourself and the other party's counsel. I also feel that because of your lack of effort on my behalf over the last eleven months, I have likely lost any chance of winning my case.
I am requesting to have my file and reimbursed fee of $3,000 in my possession no later than the end of business day on February 28, 2017.
[¶12] On February 27, 2017, Mr. Hiatt responded:
Dear Kyle:
I received your letter on Friday and called and left a message. Your case is not on the back burner. As you are aware, [J]udge James will not hold a hearing until a GAL has done something regarding this matter.
There are a very limited number of practitioners in this area that accept [GAL] work. I have spoken with them all and to this point, no one has committed to accepting the appointment. However, on Saturday, I heard back from an attorney I had approached before, who indicated he now has time in his work schedule to get going as a [GAL]. The terms would be for both sides to deposit $1000.00 and schedule meetings with him.
He is willing to accept your case and [B]obby [Pineda] has already approved the selection in past conservations [sic], so if you indicate to proceed, it can. I am willing to keep you as a client and see this matter *945 through. You know how much time and effort I have put in so far getting all the initial work although [sic] the complete discovery process. Everything has been done that can be, except for a final court hearing date and [GAL] report, neither of which I have any control over. It is disingenuous of you to attempt to claim that I have "filed a limited amount of paperwork and exchanged a few emails". I have kept a copy of all communications between us including cell messages and texts and emails. All that aside, I am still willing to keep you on, and protect your ability to proceed without being disadvantaged by attempting to proceed pro se.
Bobby has indicated that you have contacted him, indicating that you are going to proceed Pro Se, that is a big mistake unless you are just willing to settle for shared custody now. Let me know right away what you want to do. I need to file the motion and order appointing so we can lock this in, but it is up to you.
[¶13] Mr. Dudzik responded the next day with an email questioning the timing of a GAL's "sudden" availability after "months" of no progress. Mr. Dudzik commented that "[w]ith it almost being a year in, I see no possibility of me getting full custody anymore.... So, I don't see any use in hiring a GAL at this point." Mr. Dudzik informed Mr. Hiatt that he had become aware of his November public censure, that he was discouraged, and would not be moving forward with Mr. Hiatt as his attorney. Finally, Mr. Dudzik asked for a refund of the $3,000 fee and for a copy of his file. Mr. Hiatt responded with a letter dated the same day:
Dear Kyle:
I received your email response to my letter dated January 27, 2017. It is clear that there has been a breakdown of the contracted attorney-client relationship. It is also clear that the real reason your decision is based on assumptions you are making concerning my public censure that you have no knowledge about. It is also clear that you have not been listening to the legal advice and guidance I have provided through out [sic] your representation concerning the state of the law and shared custody, from your comments in your response letter.
I need to file a motion to withdraw to formally get permission from the court to be let out of your case, which will end the representation.
I have the same paper file you have as you have [sic]. I have provided copies throughout the representation to you of every filing and correspondence between our side and Bobby Pineda representing [Mother]. You provided any and all information used to answer and provided discovery, so I am at a loss to know why you keep stating to send "your" file to you.
Please refer to your contract to understand that you are not due a refund. You have created a situation where I can no longer represent you which is grounds to terminate our written agreement in and of itself. Please refer to paragraph numbered 8 of the contract which state [sic] "I agree the firm is not required to complete work on my case and that it may withdraw as my attorney at any time if I fail to comply with the exact terms of this agreement." You have been in violation of the agreement due to lack of payment of the contract sum agreed to on 3/2/216 [sic], of which you did not complete until after I wrote you a letter dated August 26, 2016 siting [sic] withdrawal by September 2, 2016 as a consequence of continued non-payment. I [sic] took you five months to pay an agreement you signed in March which took the final warning about non-cooperation to get the bill paid. I will send you a copy of the motion and order of withdrawal. You are now pro se, with full acknowledgement and acceptance of any risk, of all that means [sic].
[¶14] The district court granted Mr. Hiatt's motion to withdraw on March 7, 2017. Mr. Dudzik communicated directly with Mr. Pineda and obtained a modification order granting him liberal visitation and reducing his child support by over $150.00 per month.
[¶15] On March 10, 2017, Mr. Dudzik submitted a complaint regarding Mr. Hiatt to the office of Bar Counsel, and on August 23, 2017, following an investigation, Bar Counsel filed a Formal Charge against Mr. Hiatt with *946 the BPR. The charge alleged that Mr. Hiatt violated Rules 1.3, 1.4, 1.5, 1.15 and 1.16 of the Wyoming Rules of Professional Conduct. After a hearing, the BPR concluded that Bar Counsel had carried his burden of proving by clear and convincing evidence that Mr. Hiatt violated Rules 1.3, 1.4, 1.5 and 1.16, but that the alleged violation of Rule 1.15 had not been proven by clear and convincing evidence. The BPR recommended that Mr. Hiatt receive public censure, refund $1,150.00 of Mr. Dudzik's fee, and pay a $750.00 administrative fee, plus $3,674.39 in certified costs, to the Wyoming State Bar. Bar Counsel objects to the BPR's recommendation, arguing that the BPR failed to properly apply factors set forth in the ABA Standards for Imposing Lawyer Sanctions, and suggesting that a 30-day suspension would be the appropriate discipline under the circumstances. Mr. Hiatt did not file a response.
STANDARD OF REVIEW
[¶16] "The purposes of the state bar disciplinary procedure are to maintain 'the integrity of the bar,' 'to prevent the transgressions of an individual lawyer from bringing its image into disrepute' and to 'protect the public and the administration of justice.' " Bd. of Prof'l Responsibility v. Richard , 2014 WY 98, ¶ 51, 335 P.3d 1036, 1051 (Wyo. 2014) (citing Bd. of Prof'l Responsibility v. Casper , 2014 WY 22, ¶ 7, 318 P.3d 790, 793 (Wyo. 2014); Bd. of Prof'l Responsibility v. Davidson , 2009 WY 48, ¶ 17, 205 P.3d 1008, 1015 (Wyo. 2009) ; In re Clark , 613 P.2d 1218, 1221 (Wyo. 1980) ). "The BPR is an ancillary body structured by the Court and has no independent power, jurisdiction, or authority other than that specifically delegated to it in accordance with" the Rules of Disciplinary Procedure. Rule 16(b), Wyoming Rules of Disciplinary Procedure. In attorney disciplinary proceedings, this Court "will give due consideration to the findings and recommendations of the BPR, but the ultimate judgment in [disciplinary] proceedings ... is vested in the Court." Id . Accordingly, this Court makes its own determination of appropriate discipline, basing its decision upon the evidence presented to the BPR. Bd. of Prof'l Responsibility v. Custis , 2015 WY 59, ¶ 19, 348 P.3d 823, 829 (Wyo. 2015) ; Casper , ¶ 8, 318 P.3d at 793-94.
[¶17] Membership to the bar is by petition to the Wyoming Supreme Court. Wyo. Stat. Ann. § 33-5-104 (LexisNexis 2013). The Disciplinary Code for the Wyoming State Bar, § 1(a), provides that attorneys are subject to the exclusive disciplinary jurisdiction of this Court and the BPR. "Disciplinary proceedings are 'necessarily incident to the inherent power of courts to control properly their own affairs.' " Richard , 2014 WY 98, ¶ 52, 335 P.3d at 1052 (quoting State Bd. of Law Examiners v. Brown , 53 Wyo. 42, 49, 77 P.2d 626, 628 (Wyo. 1938) ). "The Board acts as an arm of this Court in taking evidence and making findings and recommendations to this Court." And, "[a]lthough we give due consideration to the Board's findings and recommendations, the 'ultimate judgment in these cases is vested in the Court.' " Id . (quoting Casper , 2014 WY 22, ¶ 8, 318 P.3d at 793-94 and citing Mendicino v. Whitchurch , 565 P.2d 460, 466 (Wyo. 1977) ); see also Davidson , 2009 WY 48, ¶ 1, 205 P.3d at 1012.
DISCUSSION
[¶18] We begin with an inquiry regarding whether the record before the BPR contains clear and convincing evidence establishing the charges against Mr. Hiatt. We then turn to the question of the appropriate sanction.
I. Does the record contain clear and convincing evidence that Mr. Hiatt violated Rules 1.3, 1.4, 1.5, 1.15, or 1.16 of the Wyoming Rules of Professional Conduct?
[¶19] "In determining whether discipline is appropriate in these special proceedings, this Court must be satisfied that 'substantial, clear, convincing, and satisfactory evidence' exists to sustain the findings of the Board." Richard , 2014 WY 98, ¶ 53, 335 P.3d at 1052 (quoting Mendicino , 565 P.2d at 475 ). Clear and convincing evidence is "that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable." Id . (quoting SMH v. State , 2012 WY 165, ¶ 19, 290 P.3d 1104, 1109 (Wyo. 2012) ). We apply the clear and convincing *947 standard to each charge against the attorney. Id. We address each alleged rule violation below.
Rule 1.3 Diligence
[¶20] Wyo. R. Prof. Conduct 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."
Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or change of conditions.... Even when a client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.
Wyo. R. Prof. Conduct 1.3, cmt. [3].
[¶21] Here, the evidence presented to the BPR established by clear and convincing evidence that Mr. Hiatt violated Rule 1.3 when he performed no work in the matter from December 6, 2016 through the end of February 2017, when he neglected his responsibility to obtain a GAL, and when he repeatedly failed to return Mr. Dudzik's emails and phone calls.
Rule 1.4 Communication
[¶22] Wyo. R. Prof. Conduct 1.4(a) requires a lawyer to:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter ;
(4) promptly comply with reasonable requests for information ; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
(Emphasis added.)
[¶23] Mr. Hiatt failed to respond to both emails and telephone calls from Mr. Dudzik. Mr. Hiatt explained at the hearing that he did not respond to those communications because nothing had changed in the case. The comments to Rule 1.4 address situations such as this:
A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. A lawyer should promptly respond to or acknowledge client communication.
Wyo. R. Prof. Conduct 1.4, cmt [5].
[¶24] Mr. Hiatt's failure to communicate with Mr. Dudzik regarding the status of the matter undoubtedly prompted Mr. Dudzik to seek updates. However, when he did, Mr. Hiatt failed to respond or even acknowledge Mr. Dudzik's communications. Accordingly, Mr. Hiatt violated Rule 1.4.
Rule 1.5 Fees
[¶25] Wyo. R. Prof. Conduct 1.5 governs fees and provides:
(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
*948 (3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained ;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
(Emphasis added.)
[¶26] Mr. Hiatt agreed to represent Mr. Dudzik for a "non-refundable flat fee in the amount of $3000.00." While the fee does not appear to be unreasonable on its face, we make our determination of whether the fee was reasonable by applying the factors above, and we conclude that it was not.
[¶27] The first factor, "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," Wyo. R. Prof. Conduct 1.5(a)(1), does not weigh heavily in Mr. Hiatt's favor, but does not weigh against him either. Mr. Hiatt was hired to seek modification of a child custody order-not a particularly novel or difficult matter for a competent attorney to undertake. Mr. Hiatt testified that he believes he put in "somewhere between 25 and 30" hours from the time he was hired through October 2016. We cannot confirm the time he spent in the matter because he does not keep time records, and "a lot of [the details in the timeline he provided to bar counsel were] pure recollection."
[¶28] The second factor is "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer." Wyo. R. Prof. Conduct 1.5(a)(2). This matter was a relatively small one that would not have dominated Mr. Hiatt's practice; thus, this factor does not weigh heavily for or against Mr. Hiatt. There is no evidence in the record regarding the third factor, "the fee customarily charged in the locality for similar legal services." Wyo. R. Prof. Conduct 1.5(a)(3).
[¶29] The fourth factor requires an examination of the fee "involved and the results obtained." Wyo. R. Prof. Conduct 1.5(a)(4). This factor weighs strongly against Mr. Hiatt. After receiving $3,000 to represent Mr. Dudzik, Mr. Hiatt did very little work to bring the matter to resolution. While it is true that he had meetings with Mr. Dudzik and exchanged a handful of emails with opposing counsel and Mr. Dudzik, the only things that were accomplished were the filing of the petition for modification and an exchange of discovery, which was not completed on time and was mostly completed by Mr. Dudzik and not Mr. Hiatt.
[¶30] The fifth factor is "time limitations imposed by the client or by the circumstances." Wyo. R. Prof. Conduct 1.5(a)(5). Here, Mr. Hiatt was aware that there was "some urgency" because Mother had a history of substance abuse, and Mr. Dudzik testified that Mr. Hiatt was aware of the "urgency of the timing of all this" because he told Mr. Dudzik "that come midsummer or so, that [he] should have full custody of [his] son." Mr. Hiatt's work, however, did not reflect the urgency of the matter or the timeline he laid out with his client. Mr. Dudzik testified that after almost a year without progress, Mother "was clean and sober, her interlock was taken out, [and he] felt that [he] had a slim to none chance ... to get full custody."
[¶31] The sixth and seventh factors, "the nature and length of the professional relationship with the client" and "the experience, reputation, and ability of the lawyer or lawyers performing the services," Wyo. R. Prof. Conduct 1.5(a)(6) & (7), carry little weight in this case. There is nothing in the record to indicate whether Mr. Hiatt had a professional relationship with Mr. Dudzik prior to the present matter and, aside from Mr. Hiatt's November 2016 public censure regarding his representation of another client, which we address later in this opinion, the record contains nothing regarding Mr. Hiatt's reputation and ability.
[¶32] The final factor is "whether the fee is fixed or contingent." Wyo. R. Prof. Conduct 1.5(a)(8). Fixed and contingent fees are types *949 of alternative fee structures (as opposed to hourly fees) that may be used by attorneys and their clients. See John M. Burman, Professional Responsibility in Wyoming , § 5.5.3.3.7, at 162 (2008). "As with hourly fee agreements ... lawyers should ... ensure [alternative fee] agreements are ethical and enforceable." Id .
[¶33] The ultimate question, regardless of the type of fee agreement, is whether that fee is reasonable. Burman, supra , § 5.5.3.3.6, at 161. All fee agreements are "subject to the client's right to discharge the lawyer" and that right is "subject to the client's obligation to pay for the reasonable value of the attorney's services." Id . at 161-62. A fixed fee agreement "should contain a process for determining what portion of the fee, if any, will be refunded to the client and under what circumstances." Id ., § 5.5.3.3.3, at 159. Further, an "agreement which says that no portion of the fee will be refunded may be unethical and unenforceable as an interference with the client's right to discharge a lawyer and/or resulting in an excessive fee." Id . "A flat fee for which little or no work is done is by definition unreasonable, thus providing the client with a basis for initiating professional disciplinary action against the lawyer." Douglas R. Richmond, Understanding Retainers and Flat Fees , 34 J. Legal Prof. 113, 133 (2009).
[¶34] Here, Mr. Hiatt charged Mr. Dudzik a "non-refundable flat fee in the amount of $3000.00." Mr. Hiatt performed very little work to earn that fee. Despite the "non-refundable" contract provision, Mr. Hiatt had a continuing duty to charge a reasonable fee and to earn that fee. Because his representation of Mr. Dudzik was terminated before the matter was resolved, and because very little progress had been made in the matter when representation was terminated, we conclude that the full fee of $3,000 fee was unreasonable. However, we agree with the BPR that he did earn a portion of that fee. Based upon Mr. Hiatt's testimony regarding the time he spent on the case and the work that was actually done, we agree with the BPR that $1,850, or approximately two-thirds of the flat fee, would have been reasonable for the work performed.
Rule 1.16
[¶35] The Wyoming Rules of Professional Conduct set forth the requirements for declining and terminating the attorney-client relationship. The relevant portions of Rule 1.16 provide:
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
....
(3) the lawyer is discharged.
....
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred . The lawyer may retain papers relating to the client to the extent permitted by other law.
Wyo. R. Prof. Conduct 1.16 (emphasis added).
[¶36] In his February 20, 2017 letter, Mr. Dudzik discharged Mr. Hiatt, requested a copy of his file, and a refund of the $3,000.00 fee. Once the representation had been terminated, Mr. Hiatt was obligated to provide a copy of his file and refund a portion of the flat fee. He failed to meet that obligation. Instead, he responded on February 28, 2017, with his letter stating that he had grounds to end the relationship early on but did not, telling Mr. Dudzik that he already had the "file," and refusing to return any unearned fees. This conduct violated Rule 1.16.
Rule 1.15
[¶37] Wyo. R. Prof. Conduct 1.15(d) requires a lawyer to hold legal fees that have been paid but not yet earned in a trust account and permits the lawyer to withdraw payments from the account as fees are earned and expenses incurred. Bar Counsel charged Mr. Hiatt with violating Rule 1.15.
*950 However, the BPR found that Bar Counsel failed to prove a violation of Rule 1.15 by clear and convincing evidence. We agree. The record contains no evidence regarding Mr. Hiatt's trust account or where the fees in this case were deposited. Accordingly, Bar Counsel failed to meet its burden of proving by clear and convincing evidence that Mr. Hiatt violated Rule 1.15.
[¶38] The record before the BPR contains clear and convincing evidence that Mr. Hiatt violated Rules 1.3, 1.4, 1.5, and 1.16 of the Wyoming Rules of Professional Conduct. We now turn to the question of appropriate discipline.
II. What is the appropriate discipline?
[¶39] The BPR recommended that the Court "issue an order of public censure" to Mr. Hiatt, require him to reimburse Mr. Dudzik's attorney fees in the amount of $1,150.00, pay a $750.00 administrative fee pursuant to Wyo. R. of Prof. Conduct 25(b), and reimburse the Wyoming State Bar $3,674.39 for certified costs pursuant to Wyo. R. Prof. Conduct 25(e). Bar Counsel objects to this recommendation, arguing that a 30-day suspension would be more appropriate discipline.
[¶40] To determine the appropriate sanctions, we look to the American Bar Association's Standards for Imposing Lawyer Sanctions (1992) (ABA Standards). Custis , 2015 WY 59, ¶ 43, 348 P.3d at 833. "[W]hile we are obligated to consider the ABA standards in deciding what sanction to impose, we do not apply those standards mechanically or adhere to them rigidly." Bd. of Prof'l Responsibility v. Mears , 2018 WY 58, ¶ 43, 418 P.3d 829, 839 (Wyo. 2018).
[¶41] ABA Standard 3.0 lists four factors to be considered in imposing a sanction after a finding of lawyer misconduct:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.
We address each of these standards below.
1. The duty violated
[¶42] The first factor is the duty that was violated. Mr. Hiatt violated several duties: duties to exercise diligence, to communicate, to charge a reasonable fee, and to refund unused fees upon termination of representation.
[¶43] ABA Standard 4.4 sets forth presumptive sanctions for lack of diligence:
4.4 Lack of Diligence
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:
4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.
4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect [that] causes injury or potential injury to a client.
4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.
4.44 Admonition is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing *951 a client, and causes little or no actual or potential injury to a client.
[¶44] ABA Standard 7 addresses sanctions for violations of other duties, such as the failure to charge reasonable fees or withdrawal from representation:
7.0 Violations of Other Duties as a Professional
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from representation, or failure to report professional misconduct.
7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.
7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.3 Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.
7.4 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.
[¶45] According to these standards, either suspension or reprimand would be the appropriate presumptive sanction based upon Mr. Hiatt's conduct in this matter.
2. The lawyer's mental state
[¶46] The second factor is the lawyer's mental state. The ABA Standards define three levels of mental states:
"Intent" is the conscious objective or purpose to accomplish a particular result.
"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.
"Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.
ABA Standards, III. Standards for Imposing Lawyer Sanctions: Black Letter Rules, Definitions.
[¶47] The BPR did not reach any conclusions regarding Mr. Hiatt's mental state. There is no evidence in the record that Mr. Hiatt intended to violate the rules or cause any particular harm to Mr. Dudzik. Further, while he should have been aware that his conduct violated the rules, especially in light of his sanction in November 2016, we cannot say that Bar Counsel established that awareness by clear and convincing evidence. Accordingly, we conclude that Mr. Hiatt's violations of the Rules of Professional Conduct comport with the ABA's definition of a negligent mental state.
3. Potential or actual injury caused by misconduct
[¶48] The third factor we consider is the potential or actual injury caused by the misconduct. The ABA Standards define "injury" as follows:
[H]arm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.
ABA Standards, III. Standards for Imposing Lawyer Sanctions: Black Letter Rules, Definitions. "Potential injury" is:
*952 [H]arm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but from some intervening factor or event, would probably have resulted from the lawyer's misconduct.
Id.
[¶49] Certainly, Mr. Dudzik suffered financial harm when Mr. Hiatt refused to return the unearned portion of his fee. In addition, Mr. Dudzik was at least potentially injured by Mr. Hiatt's lack of diligence in this matter. As Mr. Dudzik explained in his termination letter, because of the delays, he was no longer in a position to seek full custody of his child since over that time Mother's behavior improved.
4. Aggravating or mitigating factors warranting adjustment of presumptive sanction
[¶50] The final factor is the existence of aggravating or mitigating factors. The ABA Standards define and list aggravating and mitigating circumstances that may be considered in determining an appropriate sanction. ABA Standards 9.0-9.32.[3] We find four aggravating factors in this case: refusal to acknowledge wrongful nature of conduct; bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, substantial experience in the practice of law; and prior disciplinary offenses. Standards 9.22(a), (e), (g), and (i). We find no relevant mitigating factors.
a. Refusal to acknowledge wrongful nature of conduct
[¶51] The record contains clear and convincing evidence that Mr. Hiatt has refused to acknowledge the wrongful nature of his conduct. At the hearing before the BPR, instead of acknowledging his failures to comply with the Wyoming Rules of Professional Conduct, Mr. Hiatt offered excuses. For example, he stated that his computer crashed, that he thought Mr. Dudzik did not have the money to pay for a GAL, and that he did not respond to emails from his client because nothing had changed. Mr. Hiatt also continued to maintain that he did not owe a refund of fees to his client and testified that he had "changed" the language of his fee agreement *953 after he had been disciplined for failing to refund fees in a similar matter.
b. Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency
[¶52] Mr. Hiatt failed to respond to Bar Counsel's discovery requests. On September 19, 2017, Bar Counsel served written discovery consisting of interrogatories, requests for production, and requests for admission. After Mr. Hiatt failed to respond, Bar counsel contacted him by email and U.S. mail, attempting to "confer in good faith ... in an effort to obtain responses," and indicating that if he did not receive responses, he would file a motion to compel. When Mr. Hiatt did not respond, Bar Counsel filed a motion to compel, which was granted. The BPR ordered Mr. Hiatt to fully respond to Bar Counsel's interrogatories and requests for production by November 29, 2017. On that date, Mr. Hiatt emailed unsigned answers to interrogatories and requests for production of documents. Because those documents provided no new information in response to Bar Counsel's discovery requests, Bar Counsel filed a motion for relief pursuant to Rule 37(b)(2) of the Wyoming Rules of Civil Procedure, requesting appropriate sanctions. The BPR granted that motion, ordering that Mr. Hiatt "shall not be allowed to use any exhibits, documents, or other information not disclosed to or in the possession of Bar Counsel as of November 29, 2017 [and] shall not be permitted to call any witness other than himself at the hearing...." This failure to comply with discovery rules and then the BPR's subsequent order after Bar Counsel's motion to compel is clear and convincing evidence that Mr. Hiatt engaged in bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency.
c. Substantial experience in the practice of law
[¶53] Mr. Hiatt has been licensed to practice law in Wyoming since 1998, providing clear and convincing evidence that he has substantial experience in the practice of law. Bd. of Prof'l Responsibility v. Hiatt , 2016 WY 105, 382 P.3d 778, 779 (Wyo. 2016) (Appendix-BPR Report and Recommendation for Order of Public Censure); Custis , 2015 WY 59, ¶ 55, 348 P.3d at 835-36 ; In re Disciplinary Proceeding Against Ferguson , 170 Wash.2d 916, 246 P.3d 1236, 1250 (2011) ("substantial experience" is established when attorney has practice 10 or more years at the time of the misconduct).
d. Prior disciplinary offenses
[¶54] Finally, the record contains clear and convincing evidence of Mr. Hiatt's prior disciplinary record. See Hiatt , 2016 WY 105, 382 P.3d 778. Mr. Hiatt's conduct in that matter was strikingly similar to his conduct in the present matter; we found violations of Rules 1.3, 1.4 and 1.16, publicly censured Mr. Hiatt, and required him to return unearned portions of his fee, along with fees and costs. Id ., 382 P.3d at 782 (Appendix-BPR Report and Recommendation for Order of Public Censure).
[¶55] Regarding prior discipline, the ABA Standards provide:
8.0 Prior Discipline Orders
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving prior discipline.
....
8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.
8.3 Reprimand is generally appropriate when a lawyer :
(a) negligently violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or
(b) has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential *954 injury to a client, the public, the legal system, or the profession .
(Emphasis added.) This standard provides a stand-alone basis for discipline of an attorney who had been previously disciplined. Undoubtedly, Mr. Hiatt's prior discipline weighs in favor of a harsher sanction. See Custis , 2015 WY 59, ¶ 53, 348 P.3d at 835 (finding prior discipline of public censure to be an aggravating factor).
[¶56] ABA Standard 8.2 states that suspension is generally appropriate when an attorney has been "reprimanded" for the same or similar misconduct in the past. The ABA Standards define "reprimand" as "censure or public censure, ... a form of public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice." ABA Standards, B. Sanctions, § 2.5. By contrast, ABA Standard 8.3 contemplates "reprimand" when an attorney has received "admonition" for the same or similar conduct in the past. The ABA Standards define "admonition" as "private reprimand, ... a form of non-public discipline which declares the conduct of the lawyer improper, but does not limit the lawyer's right to practice." Id . at § 2.6. Because Mr. Hiatt has received public censure for similar conduct, this case falls under the purview of ABA Standard 8.2.
[¶57] We have explained that:
"[T]here is no magic formula for determining how aggravating and mitigating circumstances affect an otherwise appropriate sanction." In re Disciplinary Matter of Friedman , 23 P.3d 620, 633 (Alaska 2001) (internal quotation marks omitted). In determining the appropriate sanction, we must balance the rehabilitative and deterrent purposes of attorney discipline. "[W]e view discipline as assisting, if possible, in the rehabilitation of an errant lawyer." In re Scholl , 200 Ariz. 222, 25 P.3d 710, 712 (2001). "[T]he discipline must be fair to the attorney, with the object of correcting the wayward tendency in the accused lawyer while offering ... a fair and reasonable opportunity for rehabilitation." The Florida Bar v. Cox , 794 So.2d 1278, 1286 (Fla. 2001) (internal quotation marks omitted). Although attorney discipline can serve to improve the performance of attorneys who have strayed in performing their ethical obligations, when an attorney continues to engage in professional and ethical misconduct in spite of previous sanctions, our concern weighs more heavily toward deterrence, maintaining the integrity of the legal system, and protecting the public.
Custis , 2015 WY 59, ¶ 56, 348 P.3d at 836.
[¶58] The BPR recommended public censure but provided little analysis supporting its recommendation. We conclude that public censure is not a sufficient reprimand in this case. Mr. Hiatt received public censure for nearly identical conduct and that sanction failed to deter him. Based upon our application of the ABA Standard 8.2, in addition to our consideration of the aggravating factors contained in Standard 9.22, we conclude that the appropriate sanction in this matter is a 30-day suspension, in addition to the monetary sanctions recommended by the BPR.
[¶59] Other courts have ordered suspensions for negligent conduct when a lawyer repeats misconduct for which he has been previously reprimanded. For example, the Kansas Supreme Court imposed a one-year suspension on a lawyer who failed to return his client's telephone calls in a timely manner, failed to respond to written requests from his client's insurer regarding settlement of the matter, and had been sanctioned for communication failures in the past. In re Francis , 276 Kan. 898, 79 P.3d 1285, 1288 (2003). In In re Jones , 487 N.W.2d 599, 601 (N.D. 1992), a lawyer violated the rules of conduct by failing to keep his clients informed and by failing to complete the work he was hired to perform. The North Dakota Supreme Court held that because he had been issued two private reprimands for similar conduct in the past, the appropriate sanction would be a 30-day suspension. Id . at 602. The same court, in In re Lucas , 789 N.W.2d 73, 78 (N.D. 2010), ordered a 30-day suspension for an attorney's improper communication with a represented party when the attorney had previously been reprimanded for similar misconduct. Likewise, in People v. Frank , 752 P.2d 539 (Colo. 1988), the Colorado Supreme Court noted that the lawyer had been privately censured for neglect in representing *955 a past client. The court held that his engagement in similar misconduct warranted a 30-day suspension. Id . at 542. See also In re Kostich , 344 Wis.2d 534, 824 N.W.2d 799, 803 (2012) (lawyer who had been publicly reprimanded for failure to respond to clients' requests for information about their cases was suspended for 60 days when he engaged in similar conduct three years later); In re Askew , 776 N.W.2d 816, 823 (N.D. 2010) (where lawyer received prior admonition for same or similar misconduct, 60-day suspension was warranted); Sneed v. Bd. of Prof'l Responsibility , 301 S.W.3d 603, 618 (Tenn. 2010) (disbarring lawyer with "numerous prior disciplinary proceedings" who "continue[d] to repeat the same mistakes"); In re Rivera , 112 N.M. 217, 813 P.2d 1015, 1016 (1991) ("When an attorney has been reprimanded but continues to engage in the same or similar misconduct, suspension for practice is generally the appropriate sanction.").
[¶60] ABA Standards 4.42, 8.2, 9.22, and our review of sanctions imposed in Wyoming and other jurisdictions indicate that the appropriate sanction is a 30-day suspension. Despite receiving a public censure for nearly identical conduct in the past, Mr. Hiatt failed to adequately communicate with his client and keep him apprised of the status of his case; he failed to perform the work for which he was hired, which caused a delay that likely harmed his client; and, finally, once representation was terminated, he failed to return the unearned portion of his fee.
IT IS, THEREFORE, ORDERED:
[¶61] 1. Mr. Hiatt shall be suspended from the practice of law for a period of 30 days, commencing July 2, 2018, and must comply with Rule 21 of the Wyoming Rules of Disciplinary Procedure;
2. Mr. Hiatt shall reimburse his client $1,150.00 for unearned legal fees that had been paid; and
3. Pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Mr. Hiatt shall reimburse the Wyoming State Bar $3,674.39 for its costs incurred in handling this matter and shall pay an administrative fee of $750.00. Mr. Hiatt shall pay the total amount of $4,424.39 to the Wyoming State Bar on no later than December 1, 2018.
DATED this 11th day of June, 2018.
BY THE COURT:
/s/ E. JAMES BURKE
Chief Justice

Mr. Hiatt did not respond to Mr. Pineda's August 16 letter until October 17, 2016. At the hearing on this matter, Mr. Pineda admitted that the confusion was his fault.

Mr. Pineda testified that he had no contact from Mr. Hiatt regarding the matter from October 17, 2016 through February 2017, after Mr. Dudzik terminated the representation.

Those standards provide:
9.0 Aggravation and Mitigation
9.1 Generally-After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation. Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; (k) illegal conduct, including that involving the use of controlled substances.
9.3 Mitigation
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability ; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.